## Case No. 14,577.

### UNITED STATES v. BENZON et al.

[2 Cliff. 512.] ¹

Circuit Court, D. Massachusetts.    Oct. Term, 1865.

CUSTOMS DUTIES—WITHDRAWAL FROM WAREHOUSE —CONTRACT—REGULATIONS—NEW TARIFF ACT.

1. The plaintiffs, prior to July 14, 1862, made certain importations into the United States, and warehoused the same. Upon these importations the duties were ascertained, according to the existing act of August 5, 1861 [12 Stat. 292], and when said importations were made, the act of August 5, 1861, was in force. The importations were withdrawn from the warehouse, for consumption, after the 1st day of August, 1862, and after the act of congress of July 14, 1862 [12 Stat. 543], took effect, each withdrawal having been made more than three months from the date of importation, but less than three months from the date of the deposit in the warehouse. *Held*, that the importations were subject to the duties prescribed by the act of July 14, 1862.

[Cited in McAndrew v. Robertson, 29 Fed. 246; Re Chae Chan Ping, 36 Fed. 436.]

2. By the act of March 2, 1862, the importer could withdraw his merchandise from warehouse within three months from the time of depositing it there; but by the act of July 14th this period was changed to three months from the date of original importation. *Held*, that the act of July 14th, in its application to a case of this nature, was operative and constitutional.

3. The provisions of the act of March 2d, relating to the time in which the importations might be withdrawn from warehouse, is not to be considered a contract between the importer and the government, but a regulation of a privilege granted by the government, which privilege the government may entirely withhold. Similar changes have frequently been made upon this subject by congress.

4. The importation of goods, as between the importer and the government, is not complete as long as the goods remain in the custody of the officers of the customs; and until they are delivered to the importer, whether on shipboard or in warehouse, they are subject to any duties on imports which congress may see fit to impose, and to new legislation as well in relation to duties as to alteration in warehouse laws.

[Cited in Fabbri v. Murphy, 95 U. S. 192.]

This was an action of assumpsit brought to recover the sum of $4,992.42 and interest, alleged to be due the United States from the defendants [Edmund L. S. Benzon and others], as and for duties on certain goods imported by them into the port of Boston. The following is the substance of the agreed statement upon which the case was submitted: In the year 1862, in the months of April, May, and June, the defendants made eleven different importations of iron and steel into the port of Boston; each importation was duly entered on its arrival, and the duties being ascertained according to the existing rates of duty on such goods. Each importation was properly warehoused, and the defendants in each instance executed a bond in the form then required by law. At the time of the arrival of each importation, duties were assessed on it in accordance with

¹ [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

the tariff acts then in force. And only the duties thus assessed were paid by the defendants on the withdrawal of the several importations from warehouse. The importations were all withdrawn from warehouse after the 1st day of August, 1862, and after the tariff act of July 14, 1862 [12 Stat. 543], went into effect; and in the case of each importation, the withdrawal was more than three months from the date of the importation, but less than three months from the deposit in warehouse. The government claimed that the goods were liable to duty under the provisions of the act of July 14, 1862. The whole amount of these duties was the sum of $4,992.42; for the recovery of which, with the interest thereon, this suit is brought. The government claimed that interest should be allowed on each of the items which make up this amount of $4,992.42, from the day when the goods were withdrawn from warehouse. If the plaintiffs were entitled to recover any or all of the sums claimed, judgment was to be entered for the amount due them, according to the opinion of the court, and for costs. If the plaintiffs were not entitled to recover, then judgment to be for the defendants.

R. H. Dana, Jr., U. S. Dist. Atty., and T. K. Lothrop, Asst. U. S. Dist. Atty.

The language of the fifth section of the act of August 5, 1861 [12 Stat. 292], is as follows: "All goods, wares, and merchandise, actually on shipboard and bound to the United States, and all goods, wares, and merchandise, on deposit in warehouses or public stores at the date of the passage of this act, shall be subject to pay such duties as provided by law before and at the time of the passage of this act: provided, that all goods deposited in public store or bonded warehouse after this act takes effect and goes into operation, if designed for consumption in the United States, must be withdrawn therefrom, or the duties thereon paid in three months after the same are deposited." This statute was in force when the several importations of goods made by the defendants, and for a part of the duties on which this suit is brought, were made. The goods, on their arrival, were deposited in warehouse under its provisions, and the form of the bonds given, was in accordance with its requirements.

At this time, the duty to which these goods were subject was fixed by this statute, and on the arrival and entry of the respective importations, the amount of this duty was ascertained, in accordance with its provisions.

While the goods were still in warehouse, congress passed the act of July 14, 1862 [supra], the twenty-first section of which provides: "That all goods, wares, and merchandise, which may be in the public stores or bonded warehouses on the 1st of August, 1862, may be withdrawn for consumption upon payment of the duties now imposed thereon by law, provided the same shall be

so withdrawn within three months from the date of original importation; but all goods, wares, and merchandise which shall remain in the public stores or bonded warehouse for more than three months from the date of original importation, if withdrawn for consumption, * * * shall be subject to the duties prescribed by this act." The twenty-second section of the same act repealed all inconsistent provisions of laws. These goods were all in the predicament in which, by the language of the twenty-first section of this statute, they became subject to the duties imposed by that act. They were all, as the statement of facts finds, in the public stores on the 1st of August, 1862. The defendants, therefore, under the provisions of the act of the 14th of July, might have withdrawn them for consumption, subject only to the duties assessed on them by the act of August 5, 1861, if, in making this withdrawal, they had complied with the conditions prescribed by the act of 1862, and had withdrawn them "within three months from the date of original importation." They did not make any such withdrawal of any of the importations named, but suffered every one of them to remain in warehouse, after the expiration of three months from the date of its original importation, and made no withdrawal till after that period had elapsed. Every one of them is, therefore, by the precise language of this statute, subject to the additional duties imposed by the act of the 14th of July, 1862.

The true rule for the construction of statutes is, that the words are to be read according to their natural and obvious import, without either restricting or enlarging their meaning for the purpose of limiting or extending the operation of the statute. Martin v. Hunter, 1 Wheat. [14 U. S.] 326. "Courts cannot correct what they may deem either excesses or omissions in legislation, nor relieve against the occasionally harsh operation of statutory provisions, without the danger of doing vastly more mischief than good." Waller v. Harris, 20 Wend. 557.

The act is not properly a retroactive law. It is an act imposing new and additional duties, fixing the time when they shall take effect, a future day (the act was passed on the 14th of July, and went into effect on the 1st of August following), and saving the rights of importers already acquired under previous tariffs, by permitting them to enter for consumption at the old rates of duty their goods in warehouse on the day the act took effect, and fixing the limit of time within which this privilege may be exercised, namely, three months from the date of the importation of the goods.

As a general rule, unless there is some other period fixed by the law itself, it takes effect upon its passage. But in statutes altering the duties on imported goods, as they affect business operations carried on at a distance, and when time is necessary to enable im-

porters to act understandingly, it is usually considered wise and expedient for the legislature to fix some future day at which such statutes shall become operative. Congress has undertaken to do this in the statute of July 14, 1862. It has fixed the 1st of August, 1862, as the day when the new act shall take effect.

There is no constitutional objection to this construction of the statute of July, 1862, which subjects defendants' goods to duty. The defendants' goods being in the custody of the customs officers at the time this act was passed, and on the day when it took effect, their importation was not then complete, and they were still subject to duty. The importation of foreign goods is not complete, so long as they remain in the custody of the government, and until the final entry and delivery of the goods to the importer; until that time they are still subject to any duty on imports which congress may see fit to impose on them. Whether delivered to the importer or not, however, they were still imports and liable to duty as imports. Brown v. Maryland, 12 Wheat. [25 U. S.] 419, 438.

Even if the law under this construction did impose a double tax on the defendants' goods, it would be valid. The only constitutional limitations on the power of congress to lay taxes, necessary to be considered in this connection are: That the tax shall be for an object within the scope of the constitutional sovereignty of the United States. Gibbons v. Ogden, 9 Wheat. [22 U. S.] 198, 199. That it shall be a tax of the kind authorized by the constitution; that it shall be uniform; and, if a direct tax, that it shall be laid in the mode prescribed by the constitution. Const. U. S. art. 1, §§ 8, 9; Hylton v. U. S., 3 Dall. [3 U. S.] 173. Congress may tax and retax the same property, trade, or person without necessarily violating thereby its constitutional powers. It has done so more than once without objection. The increased duty of fifty per cent on imports assessed by the resolve of April 29, 1864, was collected on all goods entered for consumption on or after that day, even though they had been entered in bond previous to its passage. 13 Stat. 405. The tariff act of June 30, 1864, recognizes this as the true construction of this resolve. Id. 216, §§ 19, 29.

The section of the statute under consideration, and the whole statute, purport to be and are an exercise of the power of taxation, not of the right of eminent domain; and arguments drawn from that clause of the fifth article of the amendments to the constitution, which provides that private property shall not be taken for public use without just compensation, and from consideration of the limits which this clause imposes on the exercise of this right, afford no light on the decision of this question.

The duties upon all imported goods constitute a personal debt due to the United States from the importer, independently of any lien

on the goods themselves, and of any bond given for the duties; and an action will lie in favor of the government against the importer for their recovery. Meredith v. U. S., 13 Pet. [38 U. S.] 486. Assumpsit will lie for these duties as well as debt. Id.

B. R. Curtis and M. Andros, for defendants.

Congress did not intend that the said act should have a retroactive operation. If congress did so intend, then so much of said act as increases the duties on merchandise actually imported, duly entered at the customhouse, warehoused, and the duties ascertained under previous acts of congress, is unconstitutional, inoperative, and void. It should be deemed that the legislature did not intend to enact a statute which in whole or in part, is inconsistent with the great principles of justice and right, is unjust, unequal in its operation, oppressive, and at variance with the principles of the jurisprudence of enlightened nations. Such a statute, or such a construction of a statute, is condemned in the most unqualified terms by the jurists, as well of the United States as of Europe. "There is neither policy nor safety in retrospective laws, and therefore I have always had a strong aversion against them. It may in general be truly observed, that they neither accord with sound legislation nor the fundamental principles of the social compact." Calder v. Bull, 3 Dall. [3 U. S.] 395; Dwar. St. 540.

An ex post facto law, in the strict technical sense of the term, is usually understood to apply only to criminal cases, yet laws impairing previously acquired civil rights are equally within the reason of that prohibition, and equally to be condemned. Dash v. Van Kleeck, 7 Johns. 477. See Society for the Propagation of the Gospel v. Wheeler [Case No. 13,156]; Benson v. Mayor of New York, 10 Barb. 244; 1 Kent. Comm. 455; Ogden v. Saunders, 12 Wheat. [25 U. S.] 262. The right to duties, and the amount of the same vest in the government upon the arrival of the merchandise within the limits of a port of entry. Arnold v. U. S., 9 Cranch [13 U. S.] 104; U. S. v. Vowell, 5 Cranch [9 U. S.] 368; Prince v. U. S. [Case No. 11,425]; Meredith v. U. S., 13 Pet. [38 U. S.] 494. Construed otherwise, the law is unjust and oppressive, because the amount of duties to be paid is made to depend upon a circumstance over which the defendants could have no control, and against which no prudence or sagacity could provide. It is unequal in its operation, because the amount of duties depends upon the time of importation, instead of the time of warehousing, and it imposes a greater rate of duty upon warehoused goods of one merchant which may have been imported more than three months, than upon the warehoused goods of another merchant which were liable to the same duty under the same law, but who may have imported them a few days later. The

whole system of legislation upon the subject-matter is to be considered, and the different statutes considered together. It is an established rule of law that all acts in pari materia are to be taken together, as if they were one law, and they are directed to be compared in the construction of statutes, because they are considered as formed upon one system and having one object in view. Dwar. St. 569. All the revenue laws, with the single exception of the act of July 14, 1862, operate prospectively. See 2 Stat. 299; 3 Stat. 310; 9 Stat. 42; 11 Stat. 192; 12 Stat. 179.

In the construction of a statute, it is the duty of an expositor to put such a sense upon the words that no innocent person shall receive damage by a literal construction. Somerset v. Dighton, 12 Mass. 384; Murray v. Gibson, 15 How. [56 U. S.] 421. "Congress shall have power to lay and collect taxes, duties, imposts, and excises." Const. art. 1, § 8, cl. 1. Now congress, having power to lay "duties" upon merchandise imported from a foreign country, exercised it by the act of 1861, and fixed the rate of duty on bar iron and steel. These duties accrued, and the right of the government to demand them vested, immediately when the goods were brought within the limits of a port of entry, as appears by the cases of Arnold v. U. S., 9 Cranch [13 U. S.] 104; U. S. v. Vowell, 5 Cranch [9 U. S.] 368. It must, therefore, necessarily follow that the defendants had a right to demand and receive their merchandise upon the payment of these duties. The rights of the government and the rights of the importer, were, in this respect, equal. The duties having accrued, and having been paid, or secured to be paid, the merchandise ceased to be an import within the meaning of the revenue laws, and therefore ceased to be subject to any further or additional duty.

CLIFFORD, Circuit Justice. Duties were required, by the act establishing a warehousing system, passed the 6th of August, 1846, to be paid in cash. 9 Stat. 53. The same act made provision that whenever the owner, importer, or consignee made entry for warehousing, the same as therein directed, the goods so entered should be taken possession of by the collector and be deposited in the public stores, or in the other stores therein recognized and described. Both the duties and the expenses were required to be ascertained on due entry of the goods for warehousing, and they were to be secured by a bond of the owner, importer, or consignee, with surety or sureties, to the satisfaction of the collector, in double the amount of the duties, but the provision was, that the goods should be kept in these stores with due and reasonable care at the charge and risk of the owner, importer, consignee, or agent, subject at all times however, to their order upon the payment of the proper duties and expenses Provision was also

made, that in case any goods deposited as aforesaid, should remain in public store beyond one year, without payment of the duties and charges thereon, then such goods shall be appraised and sold by the collector at public auction. The effect of the provision was, that the importer might, if he saw fit, enter his goods for warehousing instead of entering them for consumption, and paying the duties immediately; but if he elected to make the former entry and take the credit, he must submit to the conditions imposed, that is, the goods must remain in the possession of the collector, and he must give the bond required by the section. None of these regulations, however, amounted to a contract between the government and the importer, and of course they were all subject to modifications or repeal. Import duties were also required to be paid or secured to be paid, before a permit was granted for landing the goods. 1 Stat. 673, § 62. Sums not exceeding $50 were required to be paid immediately, but it was at the option of the importer or importers, where the duties exceeded the sum of $50, to pay or secure the same by bond. The terms of credit under that act were not always the same, varying from three months to two years, according to the nature of the importation and the place whence exported. Credit had always been given or allowed until the act of August 30, 1842, which provided in the twelfth section "that the duties on all imported goods shall be paid in cash." 5 Stat. 562. The same requirement is re-enacted in the act establishing the warehousing system, but it is there blended with all the other provisions to which reference has been made. The warehousing act, it will be remembered, allowed the goods to remain one year in warehouse before they were required to be entered for consumption; but that provision was modified by the fourth section of the act of the 28th of March, 1854, and extended to three years from the date of the original importation. 10 Stat. 271. Important changes, however, were made in that behalf before the several importations embraced in this controversy were made, and some new provisions were enacted which it is necessary to notice. The fifth section of the act of the 5th of August, 1861, provides, that all goods actually on shipboard bound to the United States, and all goods on deposit in warehouses or public stores, at the date of the passage of the act, shall be subject to pay such duties as are provided by law, before and at the passage of this act. 12 Stat. 293.

Annexed to those enactments are several provisions, of which two are of some importance. The first proviso is, that all goods deposited in public store or bonded warehouse after this act takes effect and goes into operation, if designed for consumption in the United States, must be withdrawn therefrom, or the duties thereon paid, in three months after the same are deposited.

The second proviso is, that merchandise upon which the owner may have neglected to pay duties within three months from the time of the deposit, may be withdrawn and entered for consumption, at any time within two years of the time of its deposit, upon the payment of the legal duties with the addition of twenty-five per centum thereto. The rates of duties on imports were largely increased by the first section of that act, and yet the provisions of the fifth section were made applicable as well to goods on deposit in warehouses or public stores, as to goods actually on shipboard and bound to the United States. Defendants' importations each of them were made while that act was in force, and the several importations were entered for warehousing under the provisions of the warehouse act, and the several amendments thereto, as already explained. When the goods arrived, and the several entries for warehousing were made, the goods were subject to the duties prescribed by the last-named tariff act, and the amount of the duties was ascertained in each case in accordance with the provisions. 12 Stat. 292, § 1. They were also deposited in warehouse under these provisions as amendments to the general warehousing system; and the form of the bond given in each case was in strict conformity to its requirements. The parties concede the facts to be so, and indeed they were substantially so stated in the agreed statement, and therefore they cannot be controverted. The schedule annexed to the agreed statement shows, that the first entry for warehousing was made on the 28th of April, 1862, and that the last one was made on the 3d of July following; but the agreed statement also shows, that all the goods of the several importations in question, were still in warehouse on the 14th of July of the same year, when the tariff act of that date increasing temporarily the duties on imports was passed. Additional duties were imposed by that act, under certain conditions, on goods previously imported and deposited and remaining in warehouse.

Defendants insist that the provisions of that act do not apply to any of the importations in this case; and that is one of the principal questions presented for decision. The material provisions of the act, as applicable to the present inquiry, are, that all goods which may be in the public stores or bonded warehouse on the 1st of August, 1862, may be withdrawn for consumption upon payment of the duties now imposed thereon by law. But it also provides that all goods which shall remain in the public stores or bonded warehouse for more than three months from the date of original importation, if withdrawn for consumption, and all goods on shipboard on that day, shall be subject to the duties prescribed by this act. Warehoused goods might remain, under the provisions of the prior act, three months after

the same were deposited, before they were required to be withdrawn from the warehouse or the duties thereon were required to be paid; but the twenty-first section of the act under consideration changes the period allowed for the goods to be deposited without payment of duties, from three months after the same are deposited to three months from the date of original importations. The agreed statement shows, that all the goods of the several importations of the defendants were in public store on the 1st of August, 1862, and consequently all of them were in the predicament in which, by the express language of the twenty-first section, they became subject to the duties imposed by that act. They were imported goods, entered for warehousing, and deposited in warehouse, remaining in public stores on the day fixed by the act, and neither the owner, importer, consignee, nor agents had paid the duties thereon, or withdrawn them from the warehouse, within three months from the date of original importation. Evidently they fall within every one of the conditions described in the act, and are plainly within its intent and meaning. Argument upon that subject is unnecessary, as the statement of the case affords a demonstration that the proposition of the defendants cannot be sustained.

The second proposition of the defendants is, that if congress intended that the provisions of the act should apply to a case like the present, then so much of the act as increased the duties on the goods is unconstitutional, inoperative, and void. The views of the defendants are, that the provisions in the act of congress under which these importations were made, giving them the right to withdraw their goods from warehouse within three months after the same were deposited, upon the payment of the duties specified in the act, was in the nature of a contract; that the government having allowed the merchant to import goods and to warehouse them, upon the condition that he would withdraw them within a certain time, and pay a certain rate of duty, and the amount of the duties having been ascertained by the proper officers of the customs, and the defendants having given bonds for that amount as required by law, their right to have the possession of the goods became valid upon complying with the conditions of the bond, and that congress had no power to pass any act to divest them of that privilege. Congress has the power to lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defence and general welfare; and it has not generally been supposed that the power conferred, if the taxes are uniform throughout the United States, has any other limitation than the ability of the tax-payers, provided the power be exercised in a proper manner and for the legitimate purposes recognized in the constitution. Using the language of the constitution, "to lay" one tax implies no contract

that another shall not be laid within the same year or within a shorter period. Congress may increase the tariff and increase the duties on imports at the commencement of its session, and if the public exigency requires it, they may do the same thing by still further increase in the rates at the close of their session. State legislatures, also, and municipal corporations, may raise taxes in such sums and at such times as in the judgment of the members the interests of those they represent may require; and the former may change the system of taxation as often as they see fit, unless it is otherwise provided in the state constitution. Events beyond control have made it necessary within a few years that taxes should follow taxes in rapid succession, but it cannot be admitted that they are any the less obligatory because the exactions are more frequent, and at far higher rates than in former years. The precise objection to the law in this case, however, is not only that the rates of duty are increased, but also that a change is made by the last act in the conditions under which the goods were deposited in warehouse. When deposited, the requirements of law were, that they must be withdrawn therefrom or the duties thereon paid in three months after the same were deposited; and the complaint is, that the new act which imposes the increased duty repeals or modifies that clause, and provides in effect that the withdrawal of the goods or the payment of the duties must be made within three months from the date of original importation.

Assuming that the particular provision is a contract, then perhaps the objection taken to the modification would be entitled to weight; but if it is nothing more than a regulation of a privilege which congress may withhold entirely, it is obvious that the complaint is without foundation. The exact language of the provision is, that all goods which may be in the public stores or bonded warehouse, on the day mentioned, may be withdrawn for consumption upon payment of the duties now imposed thereon by law, provided the same shall be so withdrawn within three months from the date of the original importation. The change complained of is, that the period allowed for the withdrawal is limited to three months from the date of original importation, instead of three months from the time the goods were deposited. Such changes, however, have frequently been made in the different provisions upon the subject; and unless it be assumed that warehousing imported goods is a right, and not merely a privilege which may be granted or withheld, it is difficult to see on what ground the importer has any right to complain. One of the conditions of the bonds given was, that the importer would, on or before the expiration of three months, to be computed from the time when the goods were first deposited in public store or bonded

warehouse, well and truly pay the amount of the duties as ascertained, to the collector of the port. The alternative condition was, that he should, in the mode prescribed by law, on or before the expiration of three months, withdraw the goods from the bonded store or public warehouse. Neither of these conditions affords any evidence that the government engaged that congress would not revise the tariff laws, or would not increase or diminish the duties, nor that congress would not make any changes in the warehousing system which the public interest might require. The ground of complaint is not that the importer has been required to pay the duties specified in the bonds earlier than he agreed to do, nor that he has been compelled to withdraw them before the time therein stipulated, but that congress has increased the rates of duties upon imports, and made the new provision applicable to their goods previously deposited in warehouse.

The theory of the defendants is, that the importation in each case was complete, and that the proceedings in making the entry for warehousing, deposit of the goods, and the giving of the bond, amount to a contract that the duties upon the goods so remaining in the possession of the collector should not be increased, and that none of the provisions of the warehouse laws should be so changed as to affect unfavorably their interests as owners of the goods. Neither of those propositions, however, can be sustained. The better opinion is, that the importation of foreign goods is not complete, as between the importer and the government, so long as the goods remain in the custody of the officers of the customs, and that until they are delivered to the importer, whether on shipboard or in warehouse, they are subject to any duties on imports which congress may see fit to impose. The practice of the government shows that goods in warehouse or on shipboard have always been regarded as subject to new legislation, both in respect to duties and in respect to alteration in the warehouse laws.

The privilege of warehousing imported goods in certain cases was granted at a very early period in the history of the country. 1 Stat. 673. Option was given to the importers of teas, under the sixty-second section of the act of the 2d of March, 1799, either to secure the duties thereon, as in case of other importations, or to give bond to the collector of the district where the teas were landed, in double the amount, with condition for the payment of the duties in two years from the date of the bond. Whenever the importer elected to give the bond, the requirement was, that the goods were to be deposited, at the expense of the importers, in one or more storehouses, to be agreed upon between the importer and the inspector of the revenue. Two locks were required to be affixed to each storehouse, and the key of one was to be kept by the importer, and the key of the other by the government officer. Regulations to the same effect were enacted in the first section of the act of the 20th of April, 1818, in respect to the importation of wines and distilled spirits. 3 Stat. 469. The express condition was, if the importer elected to give the bond, that the goods should be deposited in such public or other storehouses as should be agreed upon between the importer and the surveyor, and the goods, as in the case of the importation of teas, were to be kept under the joint locks of the inspector and the importer. Duties under that act were to be paid in twelve calendar months from the date of the bond, and the collector was required to accept the bond without surety. Wool, or the manufactures of wool, or manufactures of which wool was a component part, might, under the sixth section of the act of July 14, 1832, be placed in the public stores under bond, at the risk of the importer, subject to the payment of the customary storage and charges, and to the payment of interest at the rate of six per centum per annum while so stored. Payment of the duties on the articles so stored was required to be made, one half in three and one half in six months from the date of importation. The requirement in the twelfth section of the act of the 30th of August, 1842, was, that the duties on all imported goods after the act went into operation should be paid in cash; and in case of failure to pay the duties on completion of the entry, it was provided that the goods should be taken possession of by the collector and be deposited in the public stores, there to be kept, with due and reasonable care, at the charge and risk of the owner, importer, consignee, or agent. Such goods might remain in public store sixty days; but if they remained beyond that period, without the payment of the duties, they were required to be appraised and sold by the collector. 5 Stat. 562.

Throughout these provisions the plain inference is, that congress did not regard the importation as complete while the goods remained in the custody of the proper officers of the customs. Possession of the goods in every such case is retained by the government; and there can be no doubt that such goods are properly the subject of new legislation, both in respect to the duties on imports and in respect to the warehousing system. Repeated instances may be found where congress has so legislated in addition to those already mentioned, and I am not aware that the power has ever before been called in question. The substantial effect of the new act was, that all imported goods, not then entered for consumption, whether in the foreign port or on shipboard, or in the public warehouses, were placed in the same category, and were subjected to the increased duties imposed by the act. The rights of the importer were saved by allowing him to withdraw his goods previously deposited, by paying the duties to which they were sub-

ject under the tariff acts in force when they were deposited, and at the time of the passage of the new act, provided they elected to make the withdrawal or pay the duties within the period therein specified. But they elected not to do so, and suffered the goods to remain in warehouse or in the public stores, and consequently the goods are subject to the increased duty.

Judgment for plaintiffs, according to the opinion of the court, and for costs.