## CONSTANCE *v.* UNITED STATES (No. 2166).[1]

1. EMERGENCY TARIFF ACT.
   The emergency tariff act of May 27, 1921, was designed, not to supersede, but to suspend for six months certain provisions of the tariff act of 1913, during which period certain commodities were subjected to duties not imposed by the act of 1913. It became, and during its life continued to be, a part of the tariff act of 1913. Its emergency provisions, while in force, must therefore be regarded as suspending, modifying, and substituting, and to that extent *amending*, the corresponding provisions of the prior law.

2. ENTRY, IMPLIED AND WAIVER OF.
   Where cattle (free of duty under the tariff act of 1913 but dutiable under the emergency tariff act of May 27, 1921) were landed and delivered to the importer on May 27 without payment or demand for payment of duties or estimated duties, and entry was made by the deputy collector, acting for the importer, on May 30, there was no waiver of entry, nor was there any implied entry. Notwithstanding that the cattle entered into the commerce of this country before the emergency act went into effect, the entry was made afterwards, and, in accordance with paragraph Q, Section IV, tariff act of 1913, the cattle were dutiable under it. Whatever view may be taken as to what constitutes a complete entry, goods can not be regarded as entered in a legal sense or for any purpose until the document demanded by the law has been submitted to the collector.

United States Court of Customs Appeals, January 22, 1923.

APPEAL from Board of United States General Appraisers, G. A. 8504 (T. D. 39005).

[Affirmed.]

*Allan R. Brown* for appellant.
*William W. Hoppin*, Assistant Attorney General (*Samuel Isenschmid* and *Samuel M. Richardson*, special attorneys, of counsel), for the United States.

[Oral argument October 4, 1922, by Mr. Brown and Mr. Richardson.]

Before SMITH, BARBER, and MARTIN, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

Cattle arriving on May 27, 1921, at the port of Cape Vincent, N. Y., were on that date landed and, after inspection by the collector of customs, delivered to the importer without payment or demand for payment of duties or estimated duties. No duties were exacted apparently because cattle were entitled to free entry under the pro-

---

[1] T. D. 39436.

visions of paragraph 619 of the free list of the tariff act of 1913, which paragraph was unmodified and in full force on the 27th of May, 1921, the date of importation and release from customs custody.

On the 30th of May, 1921, the deputy collector, acting for the importer, made entry of the cattle, and on June 15, 1921, the cattle were assessed for duty by the collector at 30 per cent ad valorem under the emergency tariff act which went into effect on May 28, 1921.

The importer protested that the cattle were not dutiable under the emergency tariff act inasmuch as they arrived before that act became effective.

The Board of General Appraisers overruled the protest and the importer appealed.

The emergency tariff act, as its name indicates, was an emergency measure and was designed not to supersede, but to suspend for six months certain provisions of the tariff act of 1913, during which period certain commodities were subjected to duties not imposed by the act of 1913. The emergency act became and during its life continued to be a part of the tariff act of 1913. Its emergency provisions while in force must therefore be regarded as suspending, modifying, and substituting, and to that extent amending, the corresponding provisions of the prior law. Paragraph Q, Section IV, of the tariff act of 1913, reads as follows:

Par. Q. That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this act and to no other duty, upon the entry or the withdrawal thereof: *Provided*, That when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall be levied and collected upon the weight of such merchandise at the time of its entry.

By virtue of the provisions of that paragraph the cattle covered by the protest, although imported on the 27th of May, 1921, were nevertheless not entitled to free entry unless they were entered before the 28th of May, 1921, the date on which the emergency tariff act became operative.

The importation was formally entered in writing on the 30th of May, 1921, and we can not say that the cattle were entered at an earlier day unless we are prepared to hold that the landing and inspection of the cattle by the collector of customs and their actual release from customs custody without the payment of duty or any demand therefor was the equivalent of an entry. We regret exceedingly that we can not go that far. The free delivery of the cattle led the importer to believe not only that the deputy collector of customs would make the proper entries as he was accustomed to do, but that such entry had been actually made, and we would be glad to grant

the relief prayed for if the law permitted. Unfortunately for our wishes in that behalf, the statute and the fact that an entry was *actually* made by authority of the importer preclude both the implication and the waiver of entry.

Section 2785 of the Revised Statutes requires the importer to make entry *in writing* with the collector of his importation, and to set forth in such entry the data, particulars and matters carefully and minutely specified in the section. Such entry subscribed by the person making it must be presented to the collector together with an invoice of the commodities imported and the bills of lading thereof.

For the purposes of some statutes the filing of that document with the collector and the presentation of the invoice constitutes an entry of imported goods. United States *v.* Legg (105 Fed. 930, 933, 934); United States *v.* Frazer (25 Fed. Cas. 1207); Citro Chemical Co. *v.* United States (11 Ct. Cust. Appls. 357; T. D. 39159). For the purposes of other statutes merchandise is not considered as entered until the completion of the whole transaction, that is to say, entry is not accomplished until the filing of the initial document, the payment of duties and the release of the goods from customs custody by their legal delivery to the importer. United States *v.* Cargo of Sugar (25 Fed. Cas. 288, 289); United States *v.* Baker (24 Fed. Cas. 953, 956, 958). Whether entry be given one meaning or the other it is absolutely clear, however, that although goods may be imported, they can not be regarded as entered in a legal sense or for any purpose until the document demanded by the statutes has been submitted to the collector. No such document was filed or presented in this case until the 30th of May, from which it follows that the cattle were not entered prior to the going into effect of the emergency act, and therefore in compliance with the provisions of paragraph Q, hereinbefore set forth, the importation was dutiable under that act as assessed. United States *v.* Benzon (24 Fed. Cas. 1117); Vandegrift *v.* United States (9 Ct. Cust. Appls. 112; T. D. 37978).

As we have already said in Citro Chemical Co. *v.* United States, supra, the filing of the declaration required by the statute imposes most serious obligations on the importer, and therefore ought not to be implied against him. Neither should it be implied in his favor nor considered as waived inasmuch as it is a document of the very first necessity to customs officials for the efficient performance of their duties and the proper collection of customs revenues. In view of the fact that generally the importer could not be held legally or even morally accountable for the truth of the invoices the only practicable way of minimizing the chance of fraud was to require of the importer a formal declaration as to the nature, character, and cost of his goods and as to the charges and expenses incident to the placing of the importation in condition, packed ready for shipment to the United States.

The entry is not only a check on the importer, but it supplies to the customs officials information absolutely necessary for the proper assessment of duties and the reasonably accurate determination of dutiable values. Indeed a formal entry of imported goods is of so much importance and so vital to the customs service that in practice it is usually accepted as a trustworthy statement of facts and rejected only when either the collector or the appraiser has reason to doubt its correctness or verity. Moreover, the date of filing the entry fixes definitely the time within which the collector may reliquidate and finally determine the pecuniary obligation attaching to imported goods. In addition to protecting the customs revenues and aiding in their collection the declaration for entry furnishes statistical information that is of decided importance to the legislator and the business community. As there is a statutory obligation to make entry for the purposes indicated and as no entry was tendered or made prior to the 28th of May, we do not think that the facts of this case warrant us in holding either that an entry was implied or that entry was waived.

The decision of the Board of General Appraisers is *affirmed.*