C. J. TOWER & SONS *v.* UNITED STATES (No. 4104).[1]

[1] T. D. 49496.

United States Court of Customs and Patent Appeals, March 7, 1938

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellant.
*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *Webster J. Oliver*, special attorneys, of counsel), for the United States.

[Oral argument December 10, 1937, by Mr. Barnes and Mr. Folks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges[2]

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, dismissing appellant's protest on the ground that the court was without jurisdiction to determine the issues attempted to be raised thereby.

It appears from the record that certain wheat flour was imported into the United States and entered at the port of Niagara Falls, N. Y., during the life of the tariff act of 1913. It was assessed for duty by the collector at 20 per centum ad valorem under paragraph 2 of the Emergency Tariff Act, 1921, together with a special dumping duty under section 202 (a) of the Antidumping Act, 1921.

The Emergency Tariff Act, *supra*, amended and became a part of the tariff act of 1913. *Constance* v. *United States*, 11 Ct. Cust. Appls. 435, T. D. 39436.

That the merchandise was dutiable under the tariff act of 1913, as amended, is not here questioned, although the involved entries were liquidated on April 20, 1934, long after the repeal of the tariff acts of 1913 and 1922.

Paragraph N, section 3 of the tariff act of 1913, relates to the filing of protests against decisions of collectors, and provides, among other things, that—

Such protest shall be deemed to be finally abandoned and waived unless within thirty days from the date of filing thereof the person who filed such notice or protest shall have deposited with the collector of customs a fee of $1 with respect to each protest. * * *

Upon such payment of duties, protest, and deposit of protest fee, the collector shall transmit the invoice and all the papers and exhibits connected therewith to the board of nine general appraisers, for due assignment and determination as provided by law * * *.

---

[3] Jackson, Judge, took no part in the consideration or decision of this case.

It appears from the report of the collector that the requirements of paragraph N, *supra*, had been complied with, except that the protest fee of $1 was not deposited with the collector as required by the provisions of that paragraph.

On the trial below, counsel for the Government moved to dismiss the protest on the ground that, as appellant had failed to pay the protest fee, the court was without jurisdiction to consider the issues attempted to be raised by the protest.

It is not claimed here by counsel for appellant that the protest fee was paid. Counsel concede that, by virtue of the so-called "saving clauses" contained in section 641 of the Tariff Act of 1922 and section 651 of the Tariff Act of 1930, all rights and liabilities accruing or accrued created by the importation and entry of merchandise under the tariff acts of 1913 and 1922 continued and were enforceable only under the provisions of the act in force at the time of the importation and entry of such merchandise and the regulations and rules of procedure adopted in accordance therewith, except as otherwise expressly provided. *United States* v. *Brown & Roese*, 6 Ct. Cust. Appls. 382, T. D. 35922; *Constance* v. *United States, supra; Brown & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 93, T. D. 40026; *Scaramelli* v. *United States*, 12 Ct. Cust. Appls. 134, T. D. 40056; *United States* v. *Neuman & Schwiers Co.*, 12 Ct. Cust. Appls. 207, T. D. 40224; *Penick & Ford (Ltd., Inc.)* v. *United States*, 12 Ct. Cust. Appls. 218, T. D. 40228; *United States* v. *Southern Paper Co., Ltd.*, 12 Ct. Cust. Appls. 250, T. D. 40265; *Woolworth Co.* v. *United States*, 13 Ct. Cust. Appls. 176, T. D. 41037; *James Akeroyd & Son* v. *United States*, 19 C. C. P. A. (Customs) 249, T. D. 45341; *The Mengel Co.* v. *United States*, 20 C. C. P. A. (Customs) 399, T. D. 46232; *L. Sandoz Vuille, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 303, T. D. 47349.

It is contended by counsel for appellant, however, that the "saving clauses" contained in sections 641 and 651, *supra*, and the principles announced in the cases hereinbefore cited have no application to the issues in the case at bar. In support of their contention, counsel argue that the Antidumping Act, 1921, was not repealed by the tariff acts of 1922 and 1930, and, therefore, was not intended by the Congress to be affected by the provisions of sections 641 and 651, *supra;* that section 210 of the Antidumping Act remained in full force and effect, and provides that protests against the assessment of special dumping duties may be filed in accordance with the law in existence at the time of the *imposition of such dumping duties;* and that, under the provisions now in existence (Tariff Act of 1930), no protest fee is required. Stated differently, counsel contend that the provisions of section 641, *supra*, have application only to rights and liabilities accruing or accrued under laws which were repealed or modified by

the Tariff Act of 1922, and that the provisions of section 651, *supra*, have application only to rights and liabilities accruing or accrued under laws which were repealed or modified by the Tariff Act of 1930, and that, as the Antidumping Act was neither repealed nor modified by the tariff acts of 1922 and 1930, the provisions of sections 641 and 651, *supra*, do not in any way affect the rights and liabilities accruing or accrued under the provisions of the antidumping act.

Section 210, *supra*, reads:

That for the purposes of this title the determination of the appraiser or person acting as appraiser as to the foreign market value or the cost of production, as the case may be, the purchase price, and the exporter's sales price, and the action of the collector in assessing special dumping duty, shall have the same force and effect and be subject to the same right of appeal and protest, under the same conditions and subject to the same limitations; and the general appraisers, the Board of General Appraisers, and the Court of Customs Appeals shall have the same jurisdiction, powers, and duties in connection with such appeals and protests as in the case of appeals and protests relating to customs duties under existing law.

Counsel for appellant further contend that the decision of this court in the case of *United States* v. *Manahan Chemical Co., Inc.*, 23 C. C. P. A. (Customs) 332, T. D. 48195, held, in substance, that the quoted provisions of section 210, *supra*, for appeals and protests "under existing law" referred to the law in force at the time of the enactment of the Antidumping Act, and also to the law in force at the time protests were filed. It is further contended by counsel for appellant that, in response to questions propounded by the Association of the Customs Bar, the Treasury Department made a ruling that the protest fee provided for in paragraph N, *supra*, should not be required by collectors of customs, subsequent to the enactment of the Tariff Act of 1922; that, in pursuance to that ruling, it had been the policy of the office of the Assistant Attorney General in charge of customs to follow the ruling of the Treasury Department; and that such action by the Treasury Department amounted to a waiver of any right the Government might have had to demand the payment of protest fees.

Counsel for the Government, on the other hand, insist that the provisions of sections 641 and 651, *supra*, and the principles announced in the decisions hereinbefore cited are applicable to the issues in the instant case; and that this court did not hold in the *Manahan* case, *supra*, that the language "under existing law," contained in section 210, *supra*, referred to the time when a protest was filed, as claimed by counsel for appellant, but, on the contrary, held that it referred not only to the law in existence at the time of the enactment of the Antidumping Act, "but also," quoting from our decision, "the law in force at the time of the *importation* of merchandise subject to the provisions of" the Antidumping Act. [Italics not quoted.] It is further contended by counsel for the Government that neither the Secretary of the Treasury, nor any other Government official, had any author-

ity to waive the requirements and limitations contained in paragraph N, *supra*, relating to the filing of protest fees, and, in support thereof, the following cases are cited: *Morrill* v. *Jones*, 106 U. S. 466; *Klein, Messner Co.* v. *United States*, 13 Ct. Cust. Appls. 273, T. D. 41212; *United States* v. *James P. Heffernan Paper Co.*, 17 C. C. P. A. (Customs) 61, T. D. 43358.

In its decision, the trial court, after reviewing the decisions in the cases hereinbefore cited relative to the effect of the "saving clauses" of the tariff acts of 1922 and 1930, held that they were applicable to the issues in this case; that the Secretary of the Treasury had no authority to waive the limitations contained in the provisions in paragraph N, *supra;* that, as the merchandise was imported and entered during the life of the tariff act of 1913, the provisions of paragraph N, *supra*, relative to the filing of a protest were applicable; and that, as appellant had failed to deposit with the collector the protest fee required by the provisions of that paragraph, the court had no jurisdiction to determine the issues attempted to be raised by the protest, and, accordingly, dismissed it.

So far as pertinent to the issues in this case, sections 641 and 651, *supra*, are substantially the same. Accordingly, we deem it sufficient to quote the provisions of section 641. They read:

SEC. 641. RIGHTS AND LIABILITIES.—The repeal of existing laws or modifications thereof embraced in this Act shall not affect any act done, nor any right accruing or accrued, nor any suit or proceeding had or commenced in any civil or criminal case prior to said repeal or modifications, but all liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modifications had not been made. All offenses committed and all penalties, forfeitures, or liabilities incurred prior to the taking effect hereof, under any statute embraced in, or changed, modified, or repealed by this Act, may be prosecuted and punished in the same manner and with the same effect as if this Act had not been passed. No acts of limitation now in force, whether applicable to civil causes and proceedings, or to the prosecution of offenses or for the recovery of penalties or forfeitures embraced in, modified, changed, or repealed by this Act shall be affected thereby so far as they affect any suits, proceedings, or prosecutions, whether civil or criminal, for causes arising or acts done or committed prior to the taking effect of this Act, which may be commenced and prosecuted within the same time and with the same effect as if this Act had not been passed.

It will be observed that the first two sentences of that section are limited to rights and liabilities accruing or accrued under laws embraced in, or changed, modified, or repealed by the Tariff Act of 1922, and provide that all such rights and liabilities should continue, and might be enforced "in the same manner as if" that act had not been passed.

In the last sentence of the section under consideration, the Congress provided that "No acts of limitation now in force, *whether applicable* to civil causes and proceedings, *or to* the prosecution of offenses, *or*

*for* the recovery of penalties or forfeitures *embraced in, modified, changed, or repealed by this act*," should be affected by the change, modification, or repeal of such "civil causes and proceedings," etc., or by the inclusion of them in the Tariff Act of 1922; and that, as to such "civil causes and proceedings," etc., such acts of limitation should continue in full force and effect for the prosecution of any cause existing or thereafter arising by virtue of any act done prior to the enactment of that act, "as if" that "Act had not been passed." [Italics ours.]

We are of opinion that the language "whether applicable to," contained in the provisions under consideration, was intended to limit the scope and operation of those provisions *to* "civil causes and proceedings, *or to* the prosecution of offenses, *or for* the recovery of penalties or forfeitures *embraced in, modified, changed, or repealed by*" that act. [Italics ours.] As to *such* "civil causes and proceedings," etc., we think it was the purpose of the Congress to continue in full force and effect "acts of limitation" then in force, for the purpose of the prosecution of all causes of action existing or thereafter arising on account of "acts done or committed, prior to the taking effect of" that act, but that the Congress *did not intend* that such "acts of limitation" should continue and be applicable to causes of action then existing or thereafter arising *by virtue of the provisions of a statute not* "embraced in, modified, changed, or repealed" by that act.

As thus construed, the provisions contained in the last sentence of section 641, *supra*, are consistent with the plain provisions of the first two sentences of that section. The construction thus placed upon section 641, *supra*, applies equally to section 651, *supra*.

The Antidumping Act, 1921, was not changed, modified, repealed by, or embraced in, the Tariff Act of 1922. Accordingly, the provisions of sections 641 and 651, *supra*, have no application to rights and liabilities accruing or accrued under the provisions of the Antidumping Act, nor have they any application to the laws under which those rights and liabilities may be enforced.

Section 210, *supra*, provides that, in the event of an assessment by the collector of a special dumping duty, such assessment shall have the same force and effect, and be subject to the same rights of appeal and protest "*under the same conditions and subject to the same limitations*" as are provided "under existing law," and that the United States Customs Court, and this court, shall have the same "jurisdiction, powers, and duties in connection with such appeals and protests as in the case of appeals and protests relating to customs duties under existing law." [Italics ours.]

Although the merchandise involved in this case was imported prior to the enactment of the Tariff Act of 1922, the special dumping duties were not assessed by the collector until April 20, 1934, at which time

the Tariff Act of 1930 was in full force and effect, and the importer's right to protest such liquidation and assessment of special dumping duties is provided for in sections 514 and 515 of the latter act.

We deem it unnecessary to quote the provisions of sections 514 and 515, *supra*. It is sufficient to say that the right of protest is limited to sixty days after liquidation by the collector, and that no protest fees are required to be paid under those provisions.

We hold, therefore, that, so far as the special dumping duties are concerned, the protest was filed in accordance with the provisions of the law, and that the United States Customs Court has jurisdiction to determine the issues relating to the assessment of such duties.

As hereinbefore noted, counsel for both parties have suggested that our decision in the *Manahan* case, *supra*, if not controlling of, had some bearing on, the issues in the case at bar.

The issues raised in the instant case were not, and could not have been, raised in the *Manahan* case, *supra*. We did not there have in mind the construction to be placed upon the provisions of sections 641 and 651, *supra*, or the application of those provisions to the provisions of the Antidumping Act. In that case, this court in holding that, by virtue of the provisions of section 501 of the Tariff Act of 1930, it had jurisdiction in reappraisement proceedings, as to merchandise imported and entered under that act, to review a judgment of the appellate division of the United States Customs Court upon questions of law only said:

In view of the fact that the Congress did not refer in section 210, *supra*, to any particular act or statute, but referred rather to the general law on the subject, we must, under the authorities, hold that it was its purpose, by the language—

and the general appraisers, the Board of General Appraisers, and the Court of Customs Appeals shall have the same jurisdiction, powers, and duties in connection with such appeals and protests as in the case of appeals and protests relating to customs duties under existing law,

contained therein, to include not only the law in existence at the time of the enactment of the "Antidumping Act, 1921" but also the law in force at the time of the importation of merchandise subject to the provisions of that act.

It will be noted that we there said that the language "under existing law," contained in section 210, *supra*, had reference not only to the law "in existence at the time of the enactment of the 'Antidumping Act, 1921' but also the law in force at the time of the importation of merchandise subject to the provisions of that act."

It would have been more accurate, however, had we said that the language "under existing law" had reference "not only to the law in existence at the time of the enactment of the 'Antidumping Act, 1921'," but also the law in force "when action is taken, or proceedings are resorted to." Sutherland on Statutory Construction, Vol. 2 (2nd Ed.), Sec. 405.

In fairness to the trial court, we think it should be said that the question of the application of the provisions of sections 641 and 651, *supra,* to the issues in this case apparently was not presented to it, but was first presented at the time of the oral arguments in this court and more fully developed in supplemental briefs filed by counsel for the parties at the request of the court.

We are in agreement with the holding of the trial court that, due to the failure of the importer to pay the protest fee, as required by paragraph N, *supra,* the protest is invalid so far as it relates to duties assessed under and by virtue of the provisions of the tariff act of 1913, as amended by the Emergency Tariff Act, 1921.

It is contended by counsel for appellant that the protest fee, provided for in paragraph N, *supra,* was a matter so "trivial and unessential" that the Secretary of the Treasury had authority to waive the payment thereof, and cases are cited, which, it is contended, support that proposition.

Paragraph N, *supra,* provided for the filing of a protest within thirty days after the collector's liquidation or decision. It was further provided therein that a protest fee of $1 should be deposited with the collector with respect to each protest, and that, if such fee was not deposited within thirty days from the time of the filing of the protest, the protest should be deemed to be "finally abandoned and waived." Furthermore, the statute provided that, upon the payment of "duties, protest, *and deposit of protest fee,*" the collector should transmit the invoices and other papers to the Board of General Appraisers. [Italics ours.]

It is clear from the provisions of that paragraph that, unless the protest fee was deposited as provided therein, the Board of General Appraisers (now the United States Customs Court) acquired no jurisdiction under the tariff act of 1913 to determine the issues attempted to be raised by a protest. Those provisions were limitations on the right to sue the Government for the refund of duties or other exactions, and were expressly continued by section 641, *supra* (as well as by section 651, *supra*), and made applicable to all "causes" of action "arising" and "acts done or committed prior to the taking effect" of the Tariff Act of 1922 (except causes of action arising under the Antidumping Act, 1921, and other acts, if any, not embraced in, changed, modified, or repealed by that act), which causes of action might be "commenced and prosecuted within the same time and with the same effect as if this Act had not been passed."

It is evident from the language of paragraph N, *supra,* that the Congress did not consider the payment of protest fees a "trivial and unessential" matter. Furthermore, the Secretary of the Treasury had no authority to waive a statutory requirement relative to the

filing of protests. *James Akeroyd & Son* v. *United States, supra,* and cases cited.

For the reasons hereinbefore stated, the judgment of the United States Customs Court is *modified,* being *reversed* so far as it dismisses the protest as to the claims made therein relative to the collector's assessment of special dumping duties, and in all other respects *affirmed,* and the cause is *remanded* for further proceedings consistent with the views herein expressed.