## Case No. 14,500.

### UNITED STATES v. BAKER et al.

[5 Ben. 251; 13 Int. Rev. Rec. 85.] [1]

District Court, S. D. New York. March, 1871.

CUSTOMS — ENTRY BY MEANS OF FALSE PAPER — BRIBERY—FORFEITURE—INTENT— BURDEN OF PROOF.

1. The meaning of the clause of the 1st section of the act of March 3d, 1863 (12 Stat. 737), which provides that in case of the entry of goods by means of any false paper, &c., "said goods, wares, and merchandise, or their value, shall be forfeited and disposed of, &c.," is that the value of the goods may be recovered by action against the persons making the entry.

[Cited in U. S. v. Willètts, Case No. 16,699.]

2. W. & Co., having imported a quantity of sugar from Manila, presented at the custom house an entry for warehouse, in which was stated the number of mats of sugar and the aggregate weight of the sugar in peculs, and underneath the number of peculs a certain number of pounds. The entry having been completed, and the goods having been afterwards taken out of bond and the duties paid, and an action being brought against W. & Co.. under the act above named. to recover the value of the goods, it was claimed that this was a false entry, in that the number of pounds stated was not correct: Held, that if the defendants undertook to state in their entry the number of pounds. they were bound to make a true statement thereof: and that that statement would be true if it was a statement of the number of pounds which, by the usage at the custom house at the time. was required to be put in for that number of peculs.

3. If the statement of the pounds was false, and was made with the intent to procure the entry of the sugar on the payment of a smaller sum for duties than ought to have been paid. such act was done "knowingly," within the meaning of the act.

4. In judging of the question of intent. the jury would have a right to take into consideration the subsequent conduct and acts of the defendants.

5. The word "entry," in that act, means the entire transaction by which the importer obtains the entrance of his goods into the body of the merchandise of the United States.

6. The bribing of a weigher by an importer, at any time before the final payment of the duties, with the intent of procuring a false return, and the procuring of a false return from him, whereby the government should receive less duties than it ought to have received. would be an act within the provisions of that section of the act.

7. The act of one member of a firm, in subscribing an entry in the firm name, and taking the oath thereto, is to be deemed the act of the firm.

8. The fact that previous entries of sugar by the defendants had been made at one certain number of pounds to the pecul, would justify the jury in finding that the defendants had knowledge of a usage at the custom house to require the reduction of the pecul to pounds at that rate.

9. The provisions of the 71st section of the act of March 2d, 1799 [1 Stat. 678], in relation to the burden of proof, do not apply to suits under this act of 1863

10. On a forfeiture of the goods by reason of the falsity of the original warehouse entry, the government would be entitled to recover the value of the goods, as it was at the time of such entry; and. on a forfeiture by reason of any false practice subsequent to such original entry, the government would be entitled to recover the value of the goods at the time of the payment of the duties.

[This was an action at law by the United States against Richard Baker, Jr., to recover the value of certain sugar claimed to be forfeited.]

Noah Davis, Dist. Atty., Thomas Simons, Asst. Dist. Atty., and George S. Sedgwick, Asst. Dist. Atty., for the United States.

Sidney Webster and James B. Craig, for defendants.

BLATCHFORD, District Judge (charging jury). At length, after a devotion of now the thirteenth day to this cause, the time has arrived for the court to commit it, upon the law, as it shall be laid down to you by the court, to you, for your determination upon the facts. I shall do so as briefly as possible, confining myself strictly to an exposition of the law applicable to the facts of this case, leaving to you entirely the proper responsibility that falls upon a jury, of deciding upon the facts, on the law, as so laid down. The case is one of great magnitude and importance, not only because of the pecuniary amount involved in it. but because of the principles involved in the case, which have been so fully developed to you by the district attorney in his summing up. as one of a class of cases relating to the subject to which this relates. It 's important, also, because, if the facts in this case are proved to be such as the government claims them to be, the case deeply affects the character of the defendants. And, short of a cause involving the life of a fellow being, there is no case that can be presented to a jury. under the laws of the United States. in the courts of the United States, of more importance, more lasting importance, more far-reaching importance, in all its bearings and relations, than

---

[1] [Reported by Robert D. Benedict, Esq.. and here reprinted by permission. 13 Int. Rev. Rec. 85. contains only a partial report.]

a case of this kind. These considerations excuse what may have seemed to you on the part of the district attorney, of the counsel for the defendants, and of the court, to have been, perhaps, a needless procrastination, a needless waste of time. These cases have to be tried carefully and patiently. The government must, with fidelity, as in this case, not pushing the thing too far, as has not been done in this case, put in all its evidence bearing on the case. A great deal of it depends on papers and documents; and, if they have matters in them which, on their face, are not perfectly clear, such matters must be explained. So, on the other hand, the defendants, if there is to be a verdict against them, are entitled to have that verdict rendered according to the law of the land. They are entitled to take their objections and have the court rule upon them, in order that, if any error be made by the court in matters of law, the right of reviewing the decisions of the court may be fully preserved. Therefore it is, that this case has consumed a great deal of time and that the investigation has been so thorough. For myself, I can truly say, and, certainly, it seems to me true, in regard to both the district attorney and the counsel for the defendants, that there has been nothing done in this case that has been prompted by any other motive than an earnest desire to accomplish the faithful discharge of duty.

This case is an action at law by the United States, to recover from these defendants a certain sum of money, as the value of certain sugar, which value the United States claim to have been forfeited to the United States by reason of the matters charged in the declaration. The declaration consists of two charges, or, as they are called in legal and technical parlance, two counts. Both of them are founded upon a single section of a statute of the United States, the first section of the act of March 3, 1863 (12 Stat. 737), and, in presenting this case to you, that you may clearly understand it, I shall first call your attention to the statute. The statute, after preliminarily providing for the manner in which invoices of foreign goods shall be made up abroad, shall be produced to a consul, shall have a declaration indorsed thereon, to be signed and made by a specified individual, and shall have a certificate, made by the consul, on each of the invoices, and directing to whom the consul shall deliver the invoices so certified, declares, that no goods shall be admitted to entry in the United States unless these things so required to be done in regard to the invoice, the declaration, and the certificate of the consul, shall first have been done in regular form. Then comes the clause upon which this action is founded: "If any such owner, consignee, or agent, of any goods, wares, or merchandise, shall knowingly make, or attempt to make, an entry thereof by means of any false invoice, or false certificate of a consul, vice-consul, or commercial agent, or of any invoice which shall not contain a true statement of all the particulars hereinbefore required, or by means of any other false or fraudulent document or paper, or of any other false or fraudulent practice or appliance whatsoever, said goods, wares, and merchandise, or their value, shall be forfeited and disposed of as other forfeitures for violation of the revenue laws." That means, shall be forfeited to the United States; and the forfeiture, as you perceive, is of the goods or their value—in the alternative. This section of this statute, and the 66th section of the act of March 2d, 1799 (1 Stat. 677), are the only two sections to be found in any statute of the United States relating to forfeitures under the customs laws, which are thus expressed in the alternative—a forfeiture of the offending merchandise or its value. All other statutes, of which there are innumerable ones, forfeit the merchandise simply, and forfeit it only in case it is seized and taken bodily into possession by the United States, and proceeded against as an offending thing, in rem, as it is called, when the question is, whether the property so seized and forfeited shall be condemned. But this is a prosecution for the value of goods, under the alternative clause—the goods or their value.

The 66th section of the act of 1799, in declaring that the goods, or their value, shall be forfeited, when entered on a fraudulent invoice, declares, that the goods, or the value thereof, "to be recovered of the person making entry," shall be forfeited, thus designating who shall be the responsible party to be sued by the government. The act of 1863 merely says that the goods, or their value, shall be forfeited. It does not say "to be recovered of the person making entry." But those words are not necessary to give the right of action under the act of 1863. That is the meaning of this law; and, according to the testimony in this case, the value claimed, if to be recovered from anybody, is to be recovered from these defendants.

A great deal has been said, in the course of the trial, respecting the meaning of the word "entry," and I am called upon, in the requests to charge on both sides, which are thirty in number—fourteen on the part of the government and sixteen on the part of the defendants—to give a construction to the word "entry." If any person shall "knowingly make, or attempt to make, an entry thereof," such and such consequences shall follow. One side claims that it shall have a more restricted meaning, and the other side a more enlarged meaning. Without going into any argument on the subject, I shall content myself with stating the ruling which I shall make for the purposes of this trial.

The declaration, as I have stated, is divided into two counts, and, in order to warrant a recovery by the United States, upon either count, that count must be substantially prov-

ed on the part of the United States. Now, what is the first count that must be thus substantially proved? It is this—that, on the 10th of October, 1868, the defendants, W. F. Weld & Co., imported into the United States from Manila [in the ship Franklin],[2] which was a foreign country, certain sugars, [to the value of $400,000],[2] upon which certain specific duties were due to the United States [under the following entry:

| | | | |
|---|---|---|---|
| M | Nine thousand ninety-two | | |
| T | Eleven thousand seven hundred and fifty-six | | |
| Q | Two thousand twenty-seven | | |
| C | Two thousand fourteen | | |
| S | Fifteen hundred twenty-four | | |
| B | Four thousand seventy-two | | |
| T | Twenty-five hundred sixty bags sugar...... | Pel. 14,716.36 | $64,613.92 | |
| | | 1,333.52 | 6,161.10 |
| | | 16,049.88 | $70,775.02 |
| | | -2,139,984 lbs.]² | |

—That is, so much a pound, in contradistinction to an ad valorem duty, of such a percentage on value; and that the defendants made an entry thereof into the United States—meaning, that they made such an entry as is covered by the first section of the act of March 3d. 1863—by means of a certain written paper, known as an entry, and left with the collector of the port of New York, in which entry such sugar was described in the manner set forth in such first count. There is then inserted, in such first count, a verbatim copy of the body of the paper called an entry for warehouse, which has been put in evidence on this trial, as Exhibit No. 1. It contains the letters upon the mats, which were 33,045 in number, and the number of mats marked with each letter, and the aggregate weight of the sugar in peculs—16,049$^{88}$/$_{100}$ peculs. Underneath the number of peculs is the statement—2,139,984 pounds. The first count also alleges, that the entry so left with the collector was a false and fraudulent paper, and a false and fraudulent practice and appliance, in this, to wit, that, whereas these goods were subject to the payment of specific duties, the entry did not contain a true statement of the actual weight of the sugar, but, on the contrary, contained a false statement of such weight, with the intent, on the part of the defendants, to deceive the collector in relation to the actual weight of the sugar, and procure the entry thereof on the payment of much less duties than were actually and legally due thereon; that, by reason and in consequence of this false paper, and this false and fraudulent practice and appliance, the United States were defrauded of a large part of the duties legally due on these goods; and that, by reason thereof, and of the first section of the act of March 3d, 1863, the value of these goods was forfeited to the United States, and, therefore, the United States claim to recover such value from the defendants

² [13 Int. Rev. Rec. 85.]

It is not disputed, that the only allegation of falsity, or of a false practice, or of a false appliance, made in the first count of the declaration, in respect to this original entry for warehouse, made on the 10th of October, 1868, is, that it did not contain a true statement of the actual weight of the sugar—not that the statement of the number of peculs was false, but that the statement of the number of pounds was false, and not the actual weight of the sugar. Therefore, the sole question, under the first count of the declaration, is, whether the statement of this number of pounds in the entry was a false statement. For that statement, the defendants are, upon the evidence, responsible, because it is shown that the entry, containing this statement of the number of pounds, bore, when presented to be passed at the custom house, the signature of the defendants' co-partnership name, made by Frederick Baker, one of the defendants.

Now, what would make such statement false? How was it false? The averment in the declaration is, that it did not contain a true statement of the actual weight of the sugar. If the defendants, irrespective of the question as to whether they were bound to put into the entry a statement of the weight of the sugar in American pounds, undertook to state therein the number of such pounds, they were bound to make a true statement thereof, and not a false one. Now, what would make such a statement false? and what true statement were they bound to put in, if they put in any statement whatever, as to the number of pounds? This, and only this—a true statement of the number of pounds required to be put in by the usage of the New York custom house at that time, not afterwards, and known to the defendants to be required by such usage, as the weight in pounds, which the collector and the naval officer had adopted as the statement of pounds for the estimation of duties on an entry for warehouse of this character. If they put such weight in, in putting in this number of pounds, there was no falsity. If they did not, there was.

If, on such view of the law, the statement was false, the next question is—Was the false statement made with intent to deceive the collector and to procure entry of the goods on payment of less than the legal duties upon the actual number of pounds of the sugar? If the statement was false, was it the intent of the defendants, in making that statement, in the original warehouse entry, to deceive the collector, and to procure the entry of the sugar on the payment of less duties than were legally due thereon? The statute says, "knowingly"—shall "knowingly" do the act. The pleader, in drawing the declaration, has interpreted the word "knowingly," which is not used in the declaration, but is used in the statute, to mean, with intent to deceive the collector and to defraud the United States; and that is the

proper meaning of the word "knowingly," with reference to this case. The government do not claim at your hands a verdict, unless they have shown that this statement in the original warehouse entry, if false, in the sense I have stated, was made with an intent to procure this result, of getting in the sugar, in the end, at less duties than it ought to have paid—not at a duty of less than three cents a pound, but on the payment to the United States of a less number of gold dollars for duties than ought to have been paid.

In judging of the question of intent, as to the charge in the first count of the declaration, as I have explained it to you, you have a right to take into consideration the subsequent conduct and acts of the defendants, as they have been proved to you, and admitted in evidence in this case, as you shall believe the facts to be. If you believe that the bribery charged took place, you have a right to use the light reflected back therefrom upon the original putting into the custom house of a false weight in pounds, on the question of the original intent in putting in such false weight. Therefore it is, that the whole evidence in the case is proper to be taken into consideration, on the question of intent, in respect to the charge in the first count of the declaration, if you shall reach the consideration of that question. This is all that I have to say in regard to the first count, except what I shall say hereafter, when I come to go over the prayers for instructions.

The first count being pointed to a falsity merely in the statement of the number of pounds in the original entry for warehouse, the second count is of a very different character. The second count alleges, that the defendants, who were the owners, consignees, or agents of these goods, procured the entry thereof into the United States, on the payment of much less duties than were due thereon, by means of a certain false and fraudulent practice and appliance, in this, that the defendants bribed the weigher, in order to procure from him a false return of the weight of the goods, which were subject to the payment of specific duties; that thereupon, and in consequence of such false and fraudulent practice, that is, of the bribery, the weigher made a false return of the weight of the goods to the collector, in this, that, whereas the sugar actually weighed 2,231,434 pounds, the weigher returned the same as weighing 2,175,644 pounds, which is about 56,000 pounds less; that, thereupon, the collector collected duties on the less amount, on a weight 56,000 pounds less than it should have been, whereas, legally and justly, he was entitled to collect duties on 2,231,434 pounds, 56,000 pounds more than he did collect duties on; that, by reason of these false practices and appliances of the defendants in relation to the weighing of the sugar, the government was defrauded of a large portion of the duties with which the goods were legally chargeable; and that,

by reason of the premises, and by force of the statute, the value of the goods became forfeited to the United States, and the United States are entitled to recover such value from the defendants in this action.

The word "entry," in the clause of the first section of the act of 1863, which says, that, if any of the persons named shall "knowingly make, or attempt to make, an entry," by means of any false practice or appliance, the goods shall be forfeited, means not only the entry specified in the preceding part of that section, but any entry so called in custom house language—so called in the custom house regulations, known at the time, and prescribed by the secretary of the treasury, under authority of an act of congress, which regulations have the force of law, and must be presumed to have been in the mind of congress, when they, in 1863, enacted this statute. We find, in these treasury regulations, many different descriptions of entries, called and designated therein as entries, and forms for which are therein given. There is an entry for warehouse, such as was the original entry in this case. There is an entry for consumption, which may be made in the first instance, and the goods be taken immediately for consumption. After goods have been warehoused, there is a withdrawal entry, as there was in this case. There is also an entry for transportation, when goods are to be taken to some other place in the United States, to be there warehoused. There is an entry for warehouse at the new place of warehouse, and there is a withdrawal entry at such new place. And there are several other descriptions of entries. This statute covers all these kinds of entries. If any owner of goods knowingly makes, or attempts to make, an entry—an original entry for warehouse, as in this case, or a withdrawal entry, as in this case, or any of such entries as are shown to have been made in this case—by means of a false practice, the transaction is within this statute; and, for the purposes of this statute, the entry is not regarded as completed or finished, until the entire transaction is ended between the owner of the goods and the government, in respect to the duties thereon—until the duties are liquidated and paid. The statute, undoubtedly, in various places, speaks of the entry as having been made at the time when a permit is given for the landing of the goods. But that is a mere mode of speech. This very section states, indeed, that the liquidation of entries shall not be delayed longer than eighteen months from the time of making the entry. But that is a mere fixing of time—the period of eighteen months from the time of putting in the paper called an entry. For the purposes of the clause which I have read to you, inflicting this forfeiture, the word "entry" means the entire transaction by which the importer obtains the entrance of his goods into the body of the merchandise of the United States. Until the entire transaction between him and the government is closed, on

an entry for warehouse, like that in the present case, by a withdrawal of the goods from warehouse, and the liquidation of the duties, and the payment of the duties, on all goods covered by the original paper, called the "entry for warehouse." the entry of the goods, within the meaning of the clause of the statute imposing forfeiture, is not to be regarded as completed, and any false practice, or any false appliance, used as an instrument or means of conducting the business, from the beginning to the end, anywhere, works the forfeiture, if it is done knowingly, or with intent to deceive or defraud the United States, or to procure the payment of less duty on the goods than they ought to have paid. Therefore, upon the second count of the declaration, if you shall believe, that, at any time, after the making of the original entry for warehouse, there was, in connection with any withdrawal entry, or at any stage, down to and including the final payment of the duties which were paid upon these goods, any bribing of the weigher by the defendants, with the intent of procuring a false return by him, and that the false return was procured, whereby the government received less duties on the goods than it ought to have received, then the charge in the second count of the declaration is made out.

The question of fact I shall leave wholly to you. I shall only state to you what I consider to be the theory of the claim on the part of the government in this case, and which is the theory of the declaration, and which the government must make out, to recover. It is this—that these 33,045 mats of sugar, entered for warehouse at a computation of 133⅓ pounds to a pecul, making 2,139,984 pounds, weighed, when weighed by the government weigher, 2,288,646 pounds, gross weight; that, deducting the government allowance for tare, of 57,212 pounds, or 2½ per cent. on the gross weight, left a net weight of 2,231,434 pounds, which was, in round numbers, 91,000 pounds more than the weight for the estimation of duties, put into the original entry; that this 2,231,434 pounds was the true net weight which ought to have been returned by the weigher; that the weigher, instead of returning that weight as the true net weight, took that number of pounds within 4 pounds, that is, took 2,231,430 pounds, and put it down as gross weight and computed 2½ per cent. upon it, as tare, and deducted such 2½ per cent., being 55,786 pounds, from it, and reached a net weight of 2,175,644 pounds, which he in fact returned to the custom house as the true net weight, and upon which the duties were paid; and that this false return was procured by the bribing of the weigher by the defendants. The difference between the number of pounds so returned as the net weight and the number of pounds stated in the original entry, was a difference of nearly 36,000 pounds, the amount stated in the original entry being

that much less. Upon the number of pounds so stated in the original entry, the defendants had, on making their withdrawal entries, paid duties, at three cents a pound. Of course, they owed to the government the duties on the 36,000 pounds, in round numbers $1,100. They were called upon to pay it, and they did pay it. The 2,231,434 pounds, which the government claim was the true net weight, and should have been returned as such by the weigher, is the footing up of net weights which appear in the little book of weights, testified to by Mr. George and annexed to his deposition. The tare in that book, 57,212 pounds, is the sum total of eight different lines of tare. There being eight different lines of gross weight, there are eight different lines of tare. The 57,212 pounds tare is the total of those eight different amounts of tare, which are the tares upon the eight parcels of mats, differently lettered. If the 2½ per cent. tare be calculated on the 2,288,646 pounds, in the gross, it would make 57,216 pounds; but it foots up only 57,212 pounds, because, by calculating the tare on each one of the eight lines of gross weight, the fractions make the difference of the four pounds. The return, however, shows, on the face of it, a setting down of 2,231,430 pounds as the gross weight, four pounds less than the number of pounds which the government claims was the actual net weight. But, a setting down of 2,288,-646 pounds, and a deduction therefrom of 2½ per cent. thereon, or 57,216 pounds, leaves, precisely, 2,231,430 pounds, which is the gross weight stated in the return. Then, the tare stated in the return, 55,786 pounds, is precisely 2½ per cent. upon the 2,231,430 pounds stated therein as the gross weight. In connection with the fact that the net weight returned was nearly 36,000 pounds more than the weight stated in the original entry, the government claims that such net weight was still 55,000 pounds less than the true net weight, and, hence, that there was a design in reducing the pecul at 133⅓ pounds, instead of at 139½ pounds, in the original entry, thus making the weight, for the estimation of duties, 91,000 pounds less than it should have been, to divert attention from the false return of the weigher, as that would show a greater weight than the entry weight, while still largely less than the true net weight. Upon those views, in connection with all the evidence in the case, the government claims, that there was a design throughout, on the part of the defendants, to commit a fraud upon the government; and, to show this design, it urges, as a fact, in connection with the testimony of George, that the defendants, in paying duties on only 2,175,644 pounds, got the benefit, not only of the 57,212 pounds of tare, which, it is admitted, was proper and legitimate tare, at 2½ per cent., but also, of a further illegal tare, of 55,786 pounds, and that, upon such 55,786 pounds the defendants have never

paid any duty to the government, and that the government has not received, by over $1,670 in gold, the duty it should have received on this sugar. The government claims, that the defendants so received the benefit of a tare, in the aggregate. of within two pounds of 113,000 pounds; and then the government refers to the account of the sales of this sugar by the defendants, whereby it appears, that, in selling the sugar, they allowed to their customers a tare upon it of 114,204 pounds. Such is the theory of the government. On the part of the defendants, the theory is, that the story of Carr and George, as to the bribery, is an utter fabrication. It is for you to pass upon these questions of fact.

In going over the requests to charge, I shall only comment on those to which my assent is given. I shall say nothing about the others, and they will be regarded as refused.

The first proposition on the part of the government I charge you to be law: "That the acts of the defendant Frederick Baker, in subscribing the entry," that is, the original entry for warehouse, "in the firm name, and taking the oath thereto, are to be deemed the acts of the defendants, and the statements contained in the entry. when so signed and verified, are to be deemed the statements of the defendants." This principle applies equally, also, to any entry in the case which was subscribed by the defendant Frederick Baker.

The third proposition on the part of the government I assent to and charge: "That, whether the defendants were required or not, by the regulations of the secretary of the treasury, to state in the entry the quantity of the sugar in the weight of the United States, it was their duty, in stating such quantity in the weight of the United States, to state the same truly, and they are responsible for the truth of the statement they made in relation to such quantity."

I also charge you affirmatively upon the fourth proposition on the part of the government: "That the act of the clerks of the custom house, in taking or adopting such statement of weight, in estimating the duties on the sugar. does not relieve the defendants from responsibility for the truth of the statement. or charge the government with the adoption or recognition of such statement of quantity as accurate, or that the defendants' mode of computing it was correct."

I also charge you in accordance with the fifth proposition on the part of the government: "That the fact, if it be so. that all the entries of sugar shown to have been made by the defendants at the port of New York, prior to the entry of October 10th, 1868, with but one exception, were made by.them at 139½ pounds to the pecul. would justify the jury in finding that the defendants had knowledge of a usage of the custom house to require the reduction of the pecul at that rate."

I also charge affirmatively on the sixth proposition on the part of the government:

"That, if the jury find that, before the entry in question. the defendants had knowledge of a usage at the custom house to reduce the pecul of sugar to pounds at the rate of 139½, the burthen is upon the defendants to show that some change was made prior to the making of the entry in question, that justified the defendants in changing the rate of reduction to 133⅓ in that entry."

I also charge affirmatively upon the seventh proposition on the part of the government: "That the fact, if it be so, that, in every entry of sugar made by. the defendants before October, 1868. in which the pecul was not reduced to pounds by the defendants, it had been taken up by the clerks. and reduced, at 139½, for the estimation of duties, is to be considered as tending, and is the best evidence, to show what the usage at the custom house was prior to the entry in question, provided such reduction at that rate by the clerks was known to the defendants."

I also charge in accordance with proposition No. 7½ on the part of the government: "That the point of time to which the inquiry of the jury is to be directed. as to the usage of the custom house establishing the rate of the pecul. is the time of the entry in question, the 10th of October, 1868."

I also charge affirmatively upon the tenth proposition on the part of the government: "That, to make an entry of goods, wares and merchandise, within the meaning of the penal clause of the first section of the act of March 3d, 1863, comprises all the acts required by statute or regulation to be done by the owner, agent, or consignee of the goods, or by the officers of the customs, concerning the goods. before the absolute right of possession thereof passes from the government to the importer, and, in a case where the goods go into consumption, it includes all the proceedings from the presentation of the original entry to the final delivery of the goods to the importer. upon performance of all the requirements of the law and regulations; and, if the jury find that the defendants knowingly presented, or caused or procured to be presented. in the course of such proceedings, and as a part thereof, any document or paper required for such purpose by law or regulations, and which was false or fraudulent, or, if they knowingly did any act,· or caused or procured any act to be done. in the course of such proceedings. and as a part thereof, which was required by law or regulations therefor, and which was false or fraudulent, the defendants must be held to have made an entry of the goods by means of false or fraudulent documents and papers, or by means of false or fraudulent practices and appliances, within the meaning of said statute, and the merchandise or its value is forfeitable." This is subject only to the qualification, that the fraudulent·papers, appliances and practices to be considered are those specified in the declaration.

I also charge in accordance with the elev-

enth proposition on the part of the government: "That, for the purposes of the trial, the entry of the sugar in question was not made, within the meaning of the penal provisions of the first section of the act of March 3d, 1863, until the ascertainment of the duties upon the original warehouse entry, upon the weigher's special return of the weight of the sugar," and, I add, until the payment of those duties, "that said return, and all entries for consumption, and all other acts, in evidence, of the defendants and their agents, or of the customs officers, subsequent to the presentation of said warehouse entry, and prior to the said ascertainment of the duties payable on said sugar," and, I add, prior to the payment of such duties, "done, or purporting to be done, in accordance with provisions or requirements of law, to effect the said entry of the said sugar, are to be considered by the jury as parts of the proceeding of making the said entry, and that, if they or any of them shall be found to have been false or fraudulent, and to have been knowingly done or procured to be done by the defendants, the plaintiffs will be entitled to a verdict." As I said before, these acts are to be acts alleged in the declaration.

I also charge in accordance with the twelfth proposition on the part of the government: "That the term 'entry,' in the penal provision of the first section of the act of March 3d, 1863, is not to be restricted, in its application, to any particular form or kind of entry, such as an entry for warehouse, but includes every description of entry of merchandise prescribed or authorized by statute or treasury regulations issued in pursuance of statutory authority; and, therefore, if the jury shall find that, in making the original entry for warehouse, or either of the several entries for withdrawal for consumption, the defendants, or their agents, knowingly presented, or caused or procured to be presented, to the proper officers of the customs, any document or paper which was false or fraudulent, or made use of any false or fraudulent practice or appliance whatsoever, by means of which the government were, or might have been, defrauded and injured, the plaintiffs are entitled to a verdict." As I said before, this is to be confined to the papers and acts alleged in the declaration. With that qualification, the proposition is correct, and, probably, that is all it means.

I also charge in accordance with the thirteenth proposition on the part of the government: "That, if the jury shall find that the defendants, in making the final entry of withdrawal for consumption, presented to the proper officers the documents and papers marked numbers 15 and 15A, containing, or purporting to contain, a statement of the quantity of the sugar not previously withdrawn under former withdrawal entries, and that, prior to such presentation of such papers, the defendants had fraudulently procured the weigher's special return of the weight of the sugar to be made at a less quantity than the weight actually ascertained by him, with intent to avoid the payment of some part of the duties required to be paid by law, and knew that the weight ascertained by the weigher had been fraudulently and falsely returned by him, and that the weight stated by the defendants in said documents and papers was less than the actual weight on which duties had not been paid, and, in making and presenting said documents and papers, concealed from the officers the facts known to the defendants in respect to the false and fraudulent return of the weigher and the mode in which it had been procured, and that the actual weight was greater than that stated in such papers and documents, and greater than the amount stated in said return, with the expectation and intent that the duties should be liquidated, upon such false return, at less than the law required to be paid, then the jury will be at liberty to find that that withdrawal entry was, within the meaning of the law, made by false and fraudulent practices and appliances, and the plaintiffs are entitled to recover the value of the sugar withdrawn thereunder."

Those are all the requests on the part of the government.

I now come to the sixteen prayers on the part of the defendants, and I charge you in accordance with the first proposition on the part of the defendants: "That there is no evidence before the jury that the original entry for warehouse of the sugar in controversy, as presented to the collector by the defendants, is false in any respect, other than in the statement therein, that 16,049 $^{88}/_{100}$ peculs are equal to 2,139,984 pounds."

I also charge you in accordance with the second proposition on the part of the defendants: "That, before the jury can find that the number of pounds thus stated by the defendants in their original warehouse entry is false, within the meaning of the first section of the act of March 3d, 1863, they must find, upon the evidence in this case, that, at the time this entry was presented at the custom house, there was a standard equivalent in pounds, for the Manila pecul of sugar, adopted and used in the New York custom house by the collector and naval officer thereof, for the purpose of estimating duties on the invoice quantity of sugars entered for warehouse from Manila, when such quantity is expressed on the invoice in peculs, and that the statement of the defendants on entry did not conform to such standard."

I also charge you in accordance with the third proposition on the part of the defendants: "That the burden is upon the United States, of satisfying the jury what was the true standard used at the custom house in New York, October 10th, 1868, at the time of the presentation of the original warehouse entry in question, for the reduction of peculs into pounds, by the collector and

naval officer, for the purpose of estimating duty on the invoice quantity thereof, and that the standard of 133⅓ adopted by the agents of the defendants in this case did not conform to such custom house standard."

I also charge you in accordance with the fourth proposition on the part of the defendants: "That, in determining what was the standard, if any, by which, in the New York custom house, in 1868, the pecul of Manila was required by the collector and naval officer thereof to be transmuted into pounds, for the purpose of estimating duties upon the invoice quantity of sugars entered at said custom house from that port, the jury is entitled and permitted, upon the evidence in this case, to inquire and consider what such standard was, in the practice of the entry clerks officially required at that time to make such estimation, and also in the practice of the importers and custom house brokers, as manifested by their action in making entries in said custom house, which is in proof in this case"—that is, as derived from what the court admitted as evidence on that subject.

I also charge in accordance with the fifth proposition on the part of the defendants: "That it was the duty of the collector and naval officer, either personally, or through their entry clerks assigned thereto, to transmute the peculs of the invoice into pounds, in order to estimate the duty on the sugars, and, even if the defendants stated on the entry an equivalent of the peculs in pounds, it was still the duty of the collector and naval officer, or their entry clerks, to verify such statement, and disregard it if false, and the jury are entitled to inquire, in this case, whether the entry clerks in the offices of the collector and naval officer did not compute the number of pounds contained in the invoice by the same standard, and arrive at the same result as did the defendants."

I also charge you in accordance with the sixth proposition on the part of the defendants: "That the equivalent of the pecul of Manila for sugar not being fixed by any law of congress, the jury cannot find a verdict for the government on the first count of the declaration, unless they are satisfied that there was, in the New York custom house, at the time of the importation in controversy, an established rate of transmuting such pecul into pounds, for the estimation of duties on the invoice quantity of Manila sugar, and that such rate was brought to the knowledge of the defendants, and that it was different from 133⅓, and that the defendants used the rate they did, in the entry in question, with intent to defraud the revenue of the United States."

I also charge in accordance with the eighth proposition on the part of the defendants: "That the witness Lydecker, having given testimony on behalf of the United States, as to instructions to the collector of customs for New York, respecting the rate of 139½ for reducing the pecul of Manila for sugar to pounds, for the estimation of duties, the court is bound to instruct the jury, that circulars or instructions issued by the secretary of the treasury in Washington, in 1858, or in any other year, cannot be taken by the jury as establishing a standard or usage in this case, unless the jury shall be satisfied, as matter of fact, upon the whole evidence, that such instructions or decisions were adopted and enforced in said custom house, by the collector thereof, at or about the time of this importation, in estimating duties by the entry clerks, on the presentation of entries for warehouse, and that the adoption and use of the standard of 139½ was brought to the knowledge of the defendants, before the entry in question."

I also charge in accordance with the ninth proposition on behalf of the defendants: "That the jury must return a verdict for the defendants upon the first count of the declaration, unless they shall be satisfied that the defendants knew their rate of transmutation of peculs into pounds, on the original entry, was false, and that the defendants made such transmutation with guilty knowledge at the time that it did not conform to the equivalent of the pecul used by the collector and naval officer in the New York custom house, at that time, for estimating duties on sugars from Manila."

I also charge in accordance with the fifteenth prayer on the part of defendants: "That the provisions of the 71st section of the act of March 2d, 1799, in relation to the burden of proof, do not apply to suits in personam, for the recovery of penalties or forfeitures, but only to suits in rem, on seizures," and, therefore, do not apply to this suit, which is a suit in personam, and not upon a seizure—in other words, that the burden of proof in this case is, as I have charged you, upon the United States—"and the jury, before they can render a verdict for the United States, must find that the government has proved the allegations in the declaration, by a fair preponderance of testimony."

There is but one subject remaining, and that is one upon which I have had, I confess, considerable difficulty  This is a suit for the value of the sugar.  I have been requested by the counsel for the defendants, in a prayer which I have refused, to charge you, that, if the jury shall find a verdict for the plaintiffs, it must be based upon the value of the sugar at the commencement of the suit.  The statute says, that, if the false thing is knowingly done, the goods, or their value, shall be forfeited.  This sugar was all taken out of the warehouse, and put into market, in the United States, and sold, to be consumed, in October, 1868; and it seems to me an absurdity, for this court deliberately to authorize a recovery by the United States of the value of that sugar at the time this suit was commenced, on the 8th of January, 1870, when the

sugar probably was obliterated from existence as sugar. If the date of the commencement of the suit be taken, it will not be the value of this sugar that will be taken, but the value of an equal quantity of the same kind of sugar. The statute says that this sugar, or its value, shall be forfeited. I have, therefore, found it impossible to say that the court can take the date of the commencement of this suit, unless it is shown in evidence, that this sugar existed somewhere at the date of the commencement of this suit. The good sense of any statute which declares that the value of a thing shall be forfeited, means its value at a time when it can be seen and handled as a physical thing and a then present value be affixed to it. I have also had some embarrassment as between the two counts of the declaration, but I have arrived at a conclusion satisfactory to my own mind, and which I shall place before you. If you shall conclude, upon the facts and the law, that it is your duty to find a verdict for the government upon the first count, and not upon the second count, you will have one rule of damages for your verdict. If you shall find for the government upon the second count, either with or without finding for it upon the first count, you will have another rule of damages, the amount in the latter case being the larger one of the two. The reason for this is, that, if your verdict shall be upon the first count—the falsity of the statement of the number of pounds in the original warehouse entry—the forfeiture of value which the government is entitled to recover in such case, is a forfeiture of the value as it was on the 10th of October, 1868, before the duties were paid. So that, if the statement of weight in the entry for warehouse was false, in the sense in which I have explained the word "false," and was knowingly so, and it was done with the intent alleged, and the first count is proved, the plaintiffs are entitled to recover the value of the sugar, as such value was on the 10th of October, 1868—that is, its value, duty not paid. Such value can be arrived at in this way, and in this way only, upon the evidence. The net weight of the sugar, taken at 2,231,-430 pounds, at the price at which it was sold by the defendants, 11¼ cents currency, per pound, amounts, less a deduction of 2⅓ per cent. discount for cash, to $245,178 37 currency. The duty on the 2,231,430 pounds, at three cents, gold, per pound, amounts in currency, computing gold at 137¾, the rate it was on the 12th of October, 1868, to $92,-213 84. Deducting such duty from the sale price, leaves a balance of $152,964 53 currency, which will be the amount of your verdict if you shall find for the plaintiffs upon the first count alone. But, if you shall find that the second count is proved, and that there was the alleged false practice by bribery, then the government is entitled to recover the value of the sugar at the consummation of the transaction by the payment of the duties—that is, the entire $245,178 37, currency. So, if you

24FED.CAS.—61

shall find for the plaintiffs on the first count, without finding for them on the second, your verdict will be for the first amount. If you shall find for them on the second count, either with or without finding for them on the first, you will find for the second or larger amount.

These are all the considerations I deem it necessary to present in submitting the case to you; and I confide it to your hands, satisfied that, from the patient attention you have bestowed upon it, and from your position as men of intelligence, appreciating a case of this kind, you will render a just and a righteous verdict.

THE COURT refused to charge in accordance with the following prayers on the part of the government:

2. "That, under the regulations of the secretary of the treasury, it was the duty of the defendants, in making the entry, to state the quantity of the sugar in the weight of the United States, and that the entry would have been imperfect if it had not contained such statement of weight."

8. "That, if the jury find, that, at and prior to the presentation of the original entry for warehouse, the collector and naval officer reduced the pecul of Manila, upon entries of any description of merchandise from Manila, presented at the custom house in New York, at a fixed rate of 139½ pounds to the pecul, the presumption of law is, that such rate was the rate at which the reduction should have been made on said entry, and the burden of proof lies with the defendants to show that the rate of 133⅓ was the fixed rate, at and prior to the presentation of said entry, for the reduction of the weight of the particular merchandise therein described."

9. "That, if the jury find the established rate of reduction of the pecul of Manila, as applicable to the original warehouse entry in this case, was 139½ pounds per pecul, and that the defendants had presented and passed an entry or entries of sugar at that rate prior to the presentation of the entry above mentioned, it is sufficient evidence that such established rate had been brought to the knowledge of the defendants at the time of presenting said warehouse entry."

THE COURT refused to charge in accordance with the following prayers on the part of the defendants:

7. "The equivalent in pounds of the pecul of Manila for sugar not being fixed by any law of congress, the jury cannot find a verdict for the government on either count of the declaration, unless they are satisfied that there was, in the New York custom house, at or about the time of the importation in controversy, an established rate of transmuting such pecul into pounds, for estimation of duties on the invoice quantity of Manila sugar, and that such rate was brought to the knowledge of these defendants, and that it was different from 133⅓, and that the defendants used the rate they did, on the entry

in question, with intent to defraud the revenue of the United States."

10. "The jury must return a verdict for the defendants upon both counts of the declaration, unless they shall be satisfied that the defendants knew their rate of transmutation of peculs into pounds on the original entry was false, and that the defendants made such transmutation with guilty knowledge at the time that it did not conform to the equivalent of the pecul used by the collector and naval officer in the New York custom house at that time, for estimating duties on sugars from Manila."

11. "The entries for withdrawal of sugars in bond, marked Exhibits 15, 16, 17 and 18, it is admitted by both parties, cover all the sugar embraced in the original warehouse entry, marked Exhibit No. 1. It is also admitted by both parties, that, on such withdrawal entries, the defendants paid three cents per pound duties on 2,139,984 pounds, to wit, $64,199 52, that being the number of pounds and the amount of duty stated by the entry clerks in the collector's and naval offices, on presentation of the original warehouse entry. It is also admitted by both parties, that, when such withdrawal entries were presented and passed by the proper officers of the custom house, the original warehouse entry had not been liquidated, and that the merchandise contained in each withdrawal entry was delivered to the importer under penal bond, as required by the fourth section of the act of congress of May 28th, 1830, and section 229 of the general regulations of the treasury department of 1857. These four withdrawal entries cannot be considered by the jury except upon the single point of inquiry, whether, when the original warehouse entry of the sugars were made at the custom house, there was an intent on the part of the defendants to withdraw the same from warehouse."

12. "Whenever duties are imposed by law on imported merchandise according to its weight, as in the case of the sugars now in controversy, such weight, for custom purposes, must be ascertained by a weigher employed by the collector, with the approbation of the principal officer of the treasury department (section 21 of 1799), to whom the oath of office required by the revenue laws has been duly administered; and such weigher must in person weigh, and must also make returns of the articles by him weighed, (section 72 of 1799); and, if the weight and return be made by any person other than one thus employed, appointed, and sworn, then it is not the weight or return required by law; and, if the jury shall find, upon the evidence in this case, that the weight and return of the sugars herein, for the purpose of assessing duty thereon, were not made by such a weigher, then they are entitled to throw out of consideration all evidence relating to such weight or return."

13. "For the purposes of the trial of the issues involved in the present case, the original warehouse entry was completed when the permit addressed to the inspector on board the importing vessel, and dated October 12th, 1868, was by the collector and naval officer signed and delivered to the defendants, or their agent; and the jury, in deliberating upon, and returning, a verdict, must reject all evidence of acts claimed by the United States to have been done by the defendants, or their agents, or any one else, subsequent to such delivery of the permit, in respect to weighing the sugars."

If 13 be refused, then 14. "For the purposes of the trial of the issues involved in the present case, the original warehouse entry was completed when the permit addressed to the inspector on board the importing vessel, and dated October 12th, 1868, was, by the collector and naval officer, signed and delivered to the defendants or their agent; and the jury, in deliberating upon and returning a verdict, must reject all evidence of acts claimed by the United States to have been done by the defendants, or their agents, or any one else, subsequent to such delivery of the permit in respect to weighing the sugars, except so far as, in the opinion of the jury, such acts bear upon the intent with which the defendants, on the original warehouse entry, transmuted the invoice number of peculs into pounds; and in no event can the jury take such evidence in respect to weighing into consideration, until they find the rate of 133⅓, adopted by the defendants, was a false rate, according to the standard adopted and used by the collector and naval officer of New York custom house, at that time, for estimating duties on the original warehouse entry."

16. "If the jury shall return a verdict for the plaintiffs, it must be for the value, in gold, of the sugar which arrived in this country and was by the defendants entered at the custom house; and that value must be computed and based on the value thereof in the city of New York, at the date of the commencement of this suit, January 8th, 1870, less the amount of duty paid thereon to the custom house by the defendants."

The jury were discharged, without having been able to agree on a verdict, after having been kept together for nineteen hours.