### UNITED STATES v. LEGG.

(Circuit Court of Appeals, Second Circuit. January 8, 1901.)

No. 55.

1. CUSTOMS DUTIES—ENTRY OF GOODS—TIME.

Rev. St. § 2785, providing that the owner of merchandise on board a vessel shall, within 15 days after report of the master to the collector of the district, make entry thereof in writing to the collector, does not prevent entry of the goods before entry of the vessel.

2. SAME—EFFECT OF OFFER TO ENTER.

An importer being entitled to make the entry of the merchandise required of him by Rev. St. § 2785, when he presented himself to the col-

lector, with his papers and moneys for duties, and offered to make entry and pay the duties, entry will be considered to have been at that time, though the collector refused to receive or file the papers for the purpose of determining whether they are goods "previously imported" and "for which entry has been made" at the time Tariff Act 1897 went into effect, so as to be subject to the duties imposed, not by it, but by Tariff Act 1894.

**8. SAME—NATURE OF ENTRY.**
  The written entry required of an importer by Rev. St. § 2785, and not the series of acts necessary to the entering of the goods, is the "entry" referred to in Tariff Act 1897, § 33, providing that, after the act goes into effect, goods previously imported, for which no entry has been made, shall be subject to the duties imposed by it.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decision of the circuit court, Southern district of New York, reversing a decision of the board of general appraisers which affirmed a decision of the collector of the port of New York touching the rate of duty to be paid by certain imported merchandise.

Henry C. Platt, for the United States.
Everit Brown, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The only question presented is whether the importation is subject to the duty imposed by the tariff act of 1894, or to that imposed by the tariff act of 1897. The latter act provided that (except where otherwise specified) the new rates of duty should be levied, collected, and paid "on and after the passage of this act." Its final section (34), providing for the repeal of inconsistent legislation, contained the usual provision that the same shall not affect any act done or any right accruing or accrued. The thirty-third section reads as follows, being in the form usual in such acts:

"Sec. 33. That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this act and to no other duty, upon the entry or the withdrawal thereof," etc.

Manifestly that part of the section beginning, "and all goods," etc., "previously entered," deals only with goods entered for warehouse, and need not further be considered, since the importation at bar was entered for consumption. The facts, about which there is no dispute, are as follows: It is conceded that by the president's signature the new tariff act did not take effect until 4:06 p. m. on Saturday, July 24, 1897. The official and actual business hours of the custom house ended at 4 p. m. of that day. The goods in question were on the steamship La Touraine. She arrived in the port of New York prior to 11:50 a. m. July 24th, and, in accordance with the usual practice, her arrival was at that hour posted in the custom house. Thus advised of the arrival of his goods, the importer, before

4 p. m. on that day, presented himself at the proper place, with all the necessary papers, and with the money to pay the duties, and offered to make a consumption entry for the merchandise and pay duties. The entry was refused by the collector on the ground that the vessel had not made entry in accordance with the law and regulations. On the following Monday the merchandise was entered for consumption, and duties were assessed thereon under the new act.

Section 2774, Rev. St. U. S., provides that within 24 hours after the arrival of any vessel from a foreign port the master shall repair to the office of the chief officer of customs and make report of the arrival, and shall thereupon or thereafter file a manifest, etc. This court has held that section 33, above quoted, does not, by the use of the word "entry," refer to this "entry of the vessel." In re Gardiner, 4 C. C. A. 155, 53 Fed. 1013. Section 2785, Rev. St. U. S., reads as follows:

"The owner or consignee of any merchandise on board of any vessel, or, in case of his absence or sickness, his known agent or factor in his name, shall, within fifteen days after the report of the master to the collector of the district for which such merchandise shall be destined, make entry thereof in writing with the collector, and shall in such entry specify the name of the vessel and of her master, in which, and the port or place from which such merchandise was imported, the particular marks, numbers, denominations, and prime cost, including charges of each particular package or parcel whereof the entry shall consist, or, if in bulk, the quantity, quality and prime cost, including charges thereof, particularly specifying the species of money in which the invoices thereof are made out. Such entry shall be subscribed by the person making it, if the owner or consignee, in his own name, or, if another person, in his name as agent or factor, for the owner or consignee. The person making such entry shall also produce to the collector and naval officer, if any, the original invoices of the merchandise, or other documents received in lieu thereof, or concerning the same, in the same state in which they were received, with the bills of lading for the same; which invoices shall be signed by the persons in the offices of the collector and naval officer who have compared and examined them."

The goods were imported and became subject to duty when La Touraine arrived within the limits of the port. Arnold v. U. S., 9 Cranch, 119, 3 L. Ed. 671. From that time the importer was debtor to the United States for the duties upon them. What, then, was the result of his effort to have them entered and to pay his debt? The board of general appraisers reached the conclusion that in view of the provision of section 2785 that the owner or consignee shall, within 15 days after the report of the master, make entry, etc., the vessel must first be entered according to law; and, secondly, after such entry of the vessel according to law, then, and then only, can the importer make entry of his merchandise. Or, in other words, "entry of the vessel at the custom house is a condition precedent to all customs proceedings by consignees of her cargo." The treasury department seems to have construed this clause of section 2785 sometimes in one way, sometimes in another. Synopsis 12,089, Nov. 28, 1891; Synopsis 12,419, Feb. 29, 1892. But in view of the decision of the supreme court in Davies v. Miller, 130 U. S. 284, 9 Sup. Ct. 560, 32 L. Ed. 932, there seems to be no doubt that the true construction imports the fixation of a date after which the importer may not make his entry, but not the fixation of the date before which he may not do

so. In that case the statute provided that the importer should give notice of dissatisfaction "within ten days after the ascertainment and liquidation of the duties." The court held that this must be construed "to fix only the terminus ad quem, the limit beyond which the notice shall not be given, and not to fix the final ascertainment and liquidation of the duties as the terminus a quo, or the first point of time at which the notice may be given." The only point in the case is whether the act of the importer in presenting himself with his papers and money for duties, and offering to make his entry and to pay his debt to the government, which arose by the mere fact of importation, put his goods in the category of those "previously imported" "for which entry has been made." If the importer was, under the statutes, entitled to make the entry required from him by section 2785 when he so presented himself, and to pay his debt for duties,—and the opinion last cited seems clearly to indicate that he was,—the collector could not deprive him of his right to do all section 2785 required of him by any arbitrary refusal to receive or file his papers. Campbell v. U. S., 107 U. S. 407, 2 Sup. Ct. 759, 27 L. Ed. 592. Having himself done all that the law required of him, all rights secured by such compliance with statutory requirements are saved by the clause of section 34 referred to at the outset of this opinion. The case may be treated, then, as if the collector had received the documents presented by the importer prior to 4 p. m. on July 24th.

The only remaining question is whether this written entry by the importer under section 2785 is the "entry" referred to in section 33 of the act of 1897. "The term 'entry,' in the acts of congress, is used in two senses. In many of the acts it refers to the bill of entry,—the paper or declaration which the merchant or importer in the first instance hands to the entry clerk. In other statutes it is used to denote, not a document, but a transaction,—a series of acts which are necessary to the end to be accomplished, viz. the entering of the goods." Hoffman, J., in U. S. v. Cargo of Sugar, 3 Sawy. 46, Fed. Cas. No. 14,722. That case was a prosecution under a statute providing a penalty "if any owner or consignee of goods shall knowingly make or attempt to make an entry thereof by means of any false invoice or false certificate * * * or of any other false or fraudulent practice or appliance whatsoever." Manifestly, the word "entry," in such statute, referred to the entire transaction of passing the goods through the custom house. To the same effect is U. S. v. Baker, 5 Ben. 251, Fed. Cas. No. 14,500. But the word is most frequently used in the statutes (e. g. Rev. St. U. S. §§ 2786, 2788, 2790, 2794, 2799, 2800, 2802, 2869, 2900), as it is in the practice of the custom house and in common speech, as referring to the particular documents which the statutes in pari materia require, and which they designate as "entries." We see no reason, and are referred to no authority, for holding that the word is used in this section (33) with any other meaning than its usual one. Indeed, the form of phrase used, "goods * * * for which no entry has been made," seems to import a reference to the entry which the importer is required to make. Similar phraseology, using the prep-

osition "for," will be found in section 2802, manifestly referring to the importer's written entry. The decision of the circuit court is affirmed