(C. D. 1284)

PAGE N. GOFFIGON *v*. UNITED STATES

United States Customs Court, Third Division

(Decided November 21, 1950)

*John F. Kavanagh* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Joseph E. Weil, William J. Vitale*, and *Harold L. Grossman*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: This case involves a protest against the collector's assessment of duty on lima beans imported from Cuba at 2⅖ cents per pound under paragraph 765 of the Tariff Act of 1930, as modified by the exclusive trade agreement with Cuba, T. D. 51819. It is claimed that the merchandise should have been assessed with duty at 1⅘ cents per pound under said trade agreement as "other" lima beans.

The pertinent provisions of the tariff act, as so modified, are as follows:

PAR. 765 [as modified by the exclusive trade agreement with Cuba, T. D. 51819]. Lima beans, green or unripe:

When entered during the period from June 1 to October 31, inclusive, in any year_____ 2⅖¢ per lb.

Other_____ 1⅘¢ per lb.

This case was originally tried at West Palm Beach, Fla., on April 8, 1949, and a decision was rendered by the court on February 14, 1950, sustaining the action of the collector and overruling the protest. *Page N. Goffigon* v. *United States*, 24 Cust. Ct. 81, C. D. 1212.

Thereafter, an application for rehearing and oral argument was made by plaintiff's attorney. The application was granted and the case was heard at Miami, Fla., on April 6, 1950. No additional evidence was presented, but oral argument was heard and the case resubmitted.

The facts are set forth fully in our earlier decision. They are, in brief, that the merchandise arrived at the port of West Palm Beach on May 30, 1948 (a Sunday); that a special permit for delivery was granted, and the merchandise was unladen on that day; that the customhouse broker presented a consumption entry at the entry desk of the customhouse on the afternoon of May 31, 1948 (a holiday); that the customhouse was physically open and some employees were there for certain specific purposes, but the office was officially closed for the transaction of business; that the entry was not accepted; that the entry was accepted on the following day, June 1, 1948, and duty was assessed at the rate applicable on that day.

Plaintiff claims that the entry should have been accepted on May 31, 1948, and that consequently the lower rate of duty should apply.

In its prior decision, this court held that since the merchandise was not entered until June 1, 1948, duty was properly assessed at the rate applicable on that day; that under the provisions of the exclusive trade agreement with Cuba, T. D. 51819, modifying paragraph 765, the date of entry controls the rate of duty applicable; that in customs cases the rule is that in computing the time within which the law requires an act to be done, if the last day falls upon a Sunday or a holiday, unless there is some statutory provision excluding that day, the courts have no power to extend the time beyond the period fixed by law.

The first point raised by plaintiff on reargument is that in deciding the case originally, only two judges participated in the decision and that all three judges of the third division should have participated, citing *Veolay, Inc., J. E. Bernard & Co., Inc.* v. *United States*, 21 C. C. P. A. 268, T. D. 46804. In that case, it appeared that an application for review was assigned to a division consisting of Judges Young, Cline, and Evans; that an opinion was written by Judge Evans and concurred in by Judge Young; that while the papers were before Judge Cline, Judge Young died; that thereafter, a dissenting opinion was written by Judge Cline; that subsequently Judge Tilson was assigned to sit in lieu of Judge Young; that he concurred in the views of Judge Cline, and Judge Evans dissented. It was held that no decision had been arrived at prior to the death of Judge Young; that his authority to act judicially ended with his death; that the case could not be decided by the remaining members of the division because they entertained opposing views. Plaintiff quotes from the portion of the opinion which states that "Judge Cline had a right, and it was her duty, to inspect and study the proposed decision of her associates, and to confer with them, before a final decision should be rendered." However, the court also said (p. 281):

\* \* \* Said section 518 provides:

A majority of the judges of any division shall have full power to hear and decide all cases and questions arising therein or assigned thereto.

In other words, two judges may hear a case, in the absence or disability of one of the judges of the division, and, if they agree, can decide it. \* \* \*

In the instant case, in the absence of one of the judges, the decision was rendered by the other two judges who were in agreement.

It is next claimed that the court should have considered section 484 (a) of the Tariff Act of 1930. That section provides:

Except as provided in sections 490, 498, 552, and 553 and in subdivision (j) of section 336 of this Act, and in subdivisions (h) and (i) of this section, the consignee of imported merchandise shall make entry therefor either in person or by an agent authorized by him in writing under such regulations as the Secretary of the Treasury may prescribe. Such entry shall be made at the customhouse

within forty-eight hours, exclusive of Sundays and holidays, after the entry of the importing vessel or report of the vehicle, or after the arrival at the port of destination in the case of merchandise transported in bond, unless the collector authorizes in writing a longer time.

Plaintiff contends that this provision shows that Congress specifically had in mind that importers were not to be deprived of any rights to which they might be entitled because the intervention of a Sunday or a holiday prevented the making of entry. In our original decision in this case, we referred to the fact that in some jurisdictions and in some circumstances the rule is that where a Sunday or a holiday is the last day of a period of time allotted for the performance of an act, such act may be performed on the following business day. We also pointed out that this rule has not been applied in customs cases except where specific provision has been made, citing section 448 of the Tariff Act of 1930 and certain rules of the United States Customs Court. Section 484 (a) is another instance where specific provision has been made for the exclusion of Sundays and holidays from the computation of a period of time. In the absence of such specific provision, the courts have no power to extend the time beyond the period fixed by law. *Wm. Larzelere & Co.* v. *United States*, 20 Treas. Dec. 45, T. D. 31202; *Hermann* v. *United States*, 66 Fed. 721; *Shefer* v. *Magone*, 47 Fed. 872; *Aldo Bolognesi* v. *United States*, 9 Treas. Dec. 938, T. D. 26414; *Psaki Bros.* v. *United States*, 3 Ct. Cust. Appls. 479, T. D. 33122; *Joseph E. Seagram & Sons, Inc.* v. *United States*, 15 Cust. Ct. 95, C. D. 951.

The exclusive trade agreement with Cuba, T. D. 51819, provides that lima beans entered during the period from June 1 to October 31, inclusive, shall be dutiable at the higher rate. There is no provision therein with reference to Sundays and holidays. The negotiators must have known that in order to enter merchandise, it would be necessary for customs officials to be on duty to receive and pass upon the entry papers and that customs offices were not open for the transaction of business on Sundays and holidays.

Since the agreement provides certain rates of duty are applicable to merchandise entered (a specific act) during named periods, both importers and customs officials can ascertain definitely what rate applies to a particular shipment. If it were held that the reduced rate applied to merchandise entered on June 1, because a Sunday or a holiday prevented entry prior thereto, what rate should apply to merchandise imported on October 31 but entered on November 1 when October 31 falls on a Sunday or a holiday? In that case, the importer could claim that he never intended to enter the goods on October 31 and is, therefore, entitled to the reduced rate, while the customs officials could claim that entry on November 1 is equivalent to entry on October 31 when that day falls on a Sunday or a holiday. The construction that the date of entry determines the rate of duty

applicable is not out of harmony with the intent of the trade agreement with Cuba, as claimed by the plaintiff, but makes clear the rates applicable on any particular date.

Section 484 (a) provides that entry must be made within 48 hours, exclusive of Sundays and holidays, after arrival at the port of entry, and section 490 provides that where this has not been done, the collector shall take the merchandise into his custody and send it to a bonded warehouse to be held at the risk and expense of the consignee. These provisions have nothing to do with the determination of what rate of duty shall be applicable to merchandise entered at a particular time.

Plaintiff also calls attention to that portion of Article I, section 7, paragraph 2, of the Constitution of the United States which reads:

> * * * If any bill shall not be returned by the President within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Congress by their adjournment prevent its return, in which case it shall not be a law.

Obviously, this is a special provision for a special set of circumstances and has nothing to do with the customs law.

We are in agreement with plaintiff's statement that where the right to free entry or to a reduced rate is made subject to regulations to be prescribed by the Secretary of the Treasury, such regulations must be regulative and not prohibitive. *United States* v. *Morris European & American Express Co.*, 3 Ct. Cust. Appls. 146, T. D. 32386; *Saji & Kariya Co.* v. *United States*, 9 Ct. Cust. Appls. 78, T. D. 37945. However, the regulations of the Secretary of the Treasury establishing the hours during which customs offices shall be open for the transaction of business are not unreasonable. Importers must be well aware of the fact that customs offices are not open 24 hours a day, 7 days a week, and can take that into consideration when arranging for the importation and entry of merchandise.

In its brief after rehearing, plaintiff cites the following cases not yet mentioned in this decision: *Hale Co.* v. *United States*, 11 Ct. Cust. Appls. 508, T. D. 39660; *United States* v. *Legg*, 105 Fed. 930; *F. J. Benkart & Co., Inc.* v. *United States*, 2 Cust. Ct. 466, C. D. 177.

In *Hale Co.* v. *United States, supra*, it appeared that at 4:15 p. m. on May 27, 1921, when the vessel carrying the merchandise was at Four Mile Rock in the port of Seattle and within 30 minutes of the dock, entry was presented to the collector's office; that at 4:25 it was refused by the entry clerk on the ground that the vessel had not arrived at the dock and that the papers did not show the markings on the bags or the name of the consignee; that the broker telephoned his office for the required information and presented the amended papers to the entry clerk between 4:29 and 4:30 p. m.; that the amended entry was rejected by the deputy collector at about 4:35 p. m.; that it was

accepted on the following day with certain minor changes; that a certified check for duties tendered with the original amended entry on May 27 was received and retained by the customs officials. In holding that the entry should have been accepted on May 27 and that the goods were dutiable at the rate in force on that day, the court said (p. 510):

The testimony in this case leaves the impression that the deputy collector of customs had set himself to block the entry of the goods on the 27th of May and to compel the importer to pay the higher rate of duty which went into effect on May 28. * * * Where, however, he presents his entry within the hours prescribed and while on the customs premises is engaged in making amendments to the documents originally presented in order to meet objections made by customs officials, the amended papers, if in proper form, should not be refused by the entry clerk if he is then in his office. The entry clerk may not be bound to remain at his desk after office hours, but if he does wait he certainly should finish the business the transaction of which was begun in due time and diligently prosecuted.

The facts in the instant case are entirely different. The customhouse was not open for the filing of entries on May 31, 1948; the entry was not presented during office hours nor was an amended entry rejected because presented a few minutes thereafter; there is no evidence that payment of estimated duties was tendered on that day. An entry is not complete until the payment of estimated duties. *Kee Co.* v. *United States,* 13 Ct. Cust. Appls. 105, T. D. 40943.

In *United States* v. *Legg, supra,* it appeared that the importer presented the necessary papers and tendered the duties to the customs officials during business hours on Saturday, July 24, 1897. Entry was refused on the ground that the vessel had not made entry. Entry was accepted on the following Monday and duty assessed at the rate which went into effect at 4:06 p. m. on July 24, 1897. The court held that the importer had done all that the law required of him and that the case must be treated as if the collector had accepted the documents presented on July 24 before 4 p. m.

In the instant case, the documents were not presented during business hours nor was the payment of estimated duties tendered.

Plaintiff claims that the case of *F. J. Benkart & Co., Inc.* v. *United States, supra,* is unsound and in conflict with the holdings of appellate courts. This case was cited along with a number of others for the proposition that the date of entry determines the rate of duty. See *F. B. Wilcon* v. *United States,* 13 Cust. Ct. 96, C. D. 876; *Tassini & Salisch-Parver, Inc.* v. *United States,* 6 Cust. Ct. 571, Abstract 45512; *John A. Conkey & Co.* v. *United States,* 11 Cust. Ct. 217, Abstract 48554; *J. P. Navailles* v. *United States,* 1 Cust. Ct. 17, C. D. 5; *William J. Oberle, Inc.* v. *United States,* 4 Cust. Ct. 319, C. D. 351. The further proposition that entry is not complete until duties are paid is supported by *Kee Co.* v. *United States, supra.*

It would unduly lengthen this decision to touch upon all the points raised and cases cited by plaintiff in the various briefs submitted herein, but careful consideration has been given to them. Nevertheless, we adhere to our original decision holding that since the entry was not accepted nor duties paid until June 1, 1948, and since the filing of the entry was not prevented by any illegal act on the part of customs officials, the merchandise was properly assessed with duty at the rate applicable to lima beans entered on June 1, namely, 2⅖ cents per pound under paragraph 765 of the Tariff Act of 1930, as modified by the exclusive trade agreement with Cuba, T. D. 51819.

The protest is overruled and judgment will be rendered accordingly.